MARTHA W. SCHEY, Respondent, *v.* BERTHOLD M. SCHEY, Individually and as Executor of SIMON SCHEY, Deceased, et al., Appellants, Impleaded with Another.

Will — testamentary trust — provisions of will examined and trusts created thereby held valid.

A testator left him surviving five children. Out of his residuary estate he created five trusts similar in all respects save for special provisions in case of marriage of his daughters, one trust for the benefit of each child. There was to be paid to the child the income, and one-half the principal at the age of twenty-five years and the balance at the age of thirty years, when the trust was to cease. In the event the child died leaving issue before all the trust fund vested, then such portion of such trust fund as had not vested was given absolutely to such issue.. Then

followed a provision, in the same form in the case of each trust, to the effect that in case the child who was the original beneficiary under that particular trust should die leaving no issue before the fund set apart for his benefit should have vested, a new trust should be created, as prescribed in the following language, "I direct my trustee to divide said fund into four equal parts, and that my said trustee shall hold one of said parts for each of my children (naming the four children other than the one whose trust was being considered) for the same uses and subject to the same conditions as I have in this instrument directed or will direct their share of my residuary estate to be held." *Held*, that when he had provided for vesting at a certain age during life, and at death in the issue, if there should be any, he completed his scheme by providing for a distribution amongst his other children in case the one dying left no issue; that he did not contemplate and intend to provide for the further event that a child entitled to a subshare of the fund of a predeceased brother or sister might himself die without issue before the age of thirty, and that the subshare thus received should be further subdivided amongst the remaining brothers and sisters, and that the provision in question, therefore, does not provide for an unlawful suspension of the power of alienation.

*Schey* v. *Schey*, 127 App. Div. 941, reversed.

(Argued January 6, 1909; decided February 23, 1909.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 8, 1908, which affirmed an interlocutory judgment of Special Term in favor of plaintiff in an action for the partition of certain real property comprising a portion of the estate of Simon Schey, deceased, as to which it was claimed he died intestate.

The following questions were certified : "1. Are the trusts attempted to be created by the testator under paragraphs 'Fourth,' 'Fifth,' 'Sixth,' 'Seventh' and 'Eighth,' as modified by the provisions of paragraph 'Thirteenth' of the will of the testator, valid and enforcible?

"2. If said trusts are not valid and enforcible in whole, are they valid and enforcible in part, and if so (a) to what extent, and (b) should the invalid parts of said trusts be cut off and the valid parts sustained?"

The facts, so far as material, are stated in the opinion.

*Henry L. Moses* for Berthold M. Schey, individually and as executor, et al., appellants. All of the trusts created by

24

the testator under his will are valid and enforceable. (*Moore* v. *Hegeman*, 72 N. Y. 376; *Vanderpoel* v. *Loew*, 112 N. Y. 167; *Corse* v. *Chapman*, 153 N. Y. 466; *Quade* v. *Bertsch*, 65 App. Div. 600; 163 N. Y. 615; *Savage* v. *Burnham*, 17 N. Y. 561; *Everitt* v. *Everitt*, 29 N. Y. 39; Chapman on Susp. on Alienation, § 176; *Oxley* v. *Lane*, 35 N. Y. 340; *Beatty* v. *Goodwin*, 127 App. Div. 98; *Roe* v. *Vingut*, 117 N. Y. 204; *Crozier* v. *Bray*, 120 N. Y. 366; *Mee* v. *Gordon*, 187 N. Y. 400; *Haug* v. *Schumaker*, 166 N. Y. 506.) If the invalid parts of a will can be expunged without essentially changing or destroying the testator's testamentary scheme, the valid parts of the will should be upheld and the invalid parts should be cut off. (*Tiers* v. *Tiers*, 98 N. Y. 568; *Kalish* v. *Kalish*, 166 N. Y. 368; *Smith* v. *Chesebrough*, 176 N. Y. 317; *Schlereth* v. *Schlereth*, 173 N. Y. 444; *Savage* v. *Burnham*, 17 N. Y. 561; *Robb* v. *W. & J. College*, 103 App. Div. 327; 185 N. Y. 485; *Henderson* v. *Henderson*, 113 N. Y. 1; *Underwood* v. *Curtis*, 127 N. Y. 523; *Schermerhorn* v. *Cutting*, 131 N. Y. 48; Chapman on Trusts, 626.)

*Edgar H. Rosenstock* for Josephine N. Schey et al., appellants. The trusts attempted to be created by the last will and testament of Simon Schey, deceased, are valid and enforceable in law, and do not suspend the power of alienation for more than two lives in being. (*Roe* v. *Vingut*, 117 N. Y. 214; *Post* v. *Hover*, 33 N. Y. 503; *Mason* v. *Jones*, 2 Barb. 229; *Du Bois* v. *Ray*, 35 N. Y. 163; *Hooker* v. *Hooker*, 41 App. Div. 235; *Savage* v. *Burnham*, 17 N. Y. 561; *Wells* v. *Wells*, 88 N. Y. 323; *Everitt* v. *Everitt*, 29 N. Y. 39; *Van Brunt* v. *Van Brunt*, 111 N. Y. 178; *Vanderpoel* v. *Loew*, 112 N. Y. 167.) Where several trusts are created by a will, some of which are legal and others illegal, the legal portions will be allowed to stand. (*Matter of Hoyt*, 32 N. Y. S. R. 787; *Kennedy* v. *Hoy*, 105 N. Y. 134; *Murray* v. *Charlick*, 23 Wkly. Dig. 563; *Manice* v. *Manice*, 43 N. Y. 303; *Harrison* v. *Harrison*, 36 N. Y. 543; *Tiers*

v. *Tiers,* 98 N. Y. 568 ; *Savage* v. *Burnham,* 17 N. Y. 561 ;
*Henderson* v. *Henderson,* 113 N. Y. 1.)

*M. J. Stroock* for respondent.    All of the trusts attempted
to be created by the testator under his last will and testament
are invalid and void as contrary to the Statute of Perpetuities.
(L. 1896, ch. 547, § 32 ; *Ward* v. *Ward,* 105 N. Y. 68 ; *Knox*
v. *Jones,* 47 N. Y. 389 ; *Colton* v. *Fox,* 67 N. Y. 348 ; *Cross* v.
*U. S. Trust Co.,* 131 N. Y. 330 ; *Central Trust Co.* v. *Egleston,*
185 N. Y. 23 ; *Herzog* v. *T. G. & T. Co.,* 177 N. Y. 86.)    A
mere possibility of an unlawful suspension of the power of
alienation or of absolute ownership is sufficient to invalidate
the trusts.    (*Herzog* v. *T. G. & T. Co.,* 177 N. Y. 99.)

Hiscock, J.    This action was brought by plaintiff, a
daughter of one Schey, deceased, for the partition of certain
real estate owned by him at the time of his death.    The action
is brought on the theory that certain clauses of a will executed
by said deceased are invalid and that, therefore, he died intes-
tate as to a large portion of his estate, and the Appellate
Division has certified to us the questions whether the clauses
under consideration are valid either in whole or in part.

Disregarding all contingencies and provisions in the will
which are conceded to be immaterial in the present discussion
we have the following facts.

Said testator left him surviving five children.    Out of his
residuary estate he created five trusts similar in all respects
save for special provisions in case of marriage of daughters,
one trust for the benefit of each child.    By the terms of
each trust there was to be paid to the child the income and in
addition one-half of the principal at the age of twenty-five
years and the balance at the age of thirty years when the
trust was to cease and determine.    In the event the child
died before all of the trust fund vested, leaving issue, then
such portion of such trust fund as had not vested was given
absolutely to such issue.    Then finally followed the provision
which is claimed to have invalidated the entire trust.    This
provision followed the same form in each case.    It was to the

effect that in case the child who was original beneficiary under that particular trust should die before all of the fund set apart for his or her benefit should have vested, leaving no issue surviving, then a new trust should be created of the portion of the fund not so vested to be held for the uses, intents and purposes described by the testator in the following language, namely: " I direct my trustee to divide said fund into four equal parts and that my said trustee shall hold one of said parts for each of my children (naming the four children other than the one whose trust was being considered) for the same uses and subject to the same conditions as I have in this instrument directed or will direct their share of my residuary estate to be held."

It is claimed that this last provision involved an unlawful suspension of the power of alienation and that for this reason it is not only invalid, but destroys the entire trust. This contention is based on the theory that if the child first dying left no issue, then the fund in his trust which had not vested would go to the other four children; that because it was provided that it should go " for the same uses and subject to the same conditions " as the original share of each child, it would follow that when the second child died leaving no issue the fund constituting the trust in his favor and the subshare received from the predeceased child would be divided into three parts which would then in similar manner go to the remaining three children with similar results upon the death of each of these successively dying without issue, and that the result of all this would be to suspend the power of alienation of the testator's property until the death of the last child.

We do not think that this theory is sustained by a reasonable construction of the testator's language, who should not be convicted of having formulated an unlawful scheme in the attempted disposition of his property, if such conclusion properly can be avoided.

There is no language which explicitly commands any such division and redivision of the residue of an original trust fund into subshares of decreasing fractional proportion down

through the line of the entire number of children, and as it seems to us the general features of the will oppose rather than favor such interpretation.

In the first place, a consideration of the general plan of the five trusts impresses us that the testator was concerned with the final disposition once for all of the principal of each trust fund at or before the decease of the original beneficiary thereof, and that he did not contemplate anything more or further than this. He provided for the payment of all of the principal of his trust to each beneficiary provided he reached a certain age. If he died before the specified age any residue not vested was to go to his issue, if any. There was still left unprovided for one conspicuous and not improbable contingency of a child dying before the appointed age leaving no issue, and this contingency was most naturally provided for by resort to the four brothers and sisters as beneficiaries of any balance not otherwise vested. In view of the pains which the testator adopted to provide for a final vesting of each trust fund within the life or at the death of the original beneficiary under all other circumstances, we ought not too readily charge him with the intent in this remaining contingency to prevent a lawful vesting by providing for a system of subshares annexed successively to the principals of the other trusts and carried forward through the lives of all of the children.

In the next place the specific language employed is opposed to respondent's contention.

Upon the death of a primary beneficiary without issue any balance of his trust fund not vested is expressly commanded to be divided into *four* parts, to be held one for each of the remaining children, and the words which follow and which are relied on by respondent are not in our judgment at all apt in commanding that on the death of the second child the principal of his fund, including the subshare received from the first deceased child, shall be divided into *three* shares, and so on through the line of children, with shares of decreasing number with each succeeding death. The testator may have overlooked certain contingencies, but we think that when he

had provided for vesting at a certain age during life, and at death in the issue if there was any, he completed his scheme by providing for a distribution amongst his other children in case the one dying left no issue, and did not contemplate and intend to provide for the further event that a child entitled to a subshare of the fund of a predeceased brother or sister might himself die without issue before the age of thirty.

Again, the terms employed by the testator rebut the idea that he intended that subshares created on the death of a child should be added to the principal of the respective trusts for the benefit of the other children and then carried forward as part of such principal into still further subdivisions measured by and continued through other lives. The testator in the provisions creating each of the primary trusts for the benefit of each of his children continually speaks of the principal as the " fund " set apart for his benefit. When we come to the provision under discussion we find him directing in each case that said " fund," meaning the principal of the original fund not vested, shall be divided into four parts for the benefit of the children other than the one then dying. That is, when the first child dies the principal or fund of his trust not vested is to be divided into four parts for the benefit of the other children respectively who are specifically named. When the second child dies a similar disposition is still commanded. The principal or fund of his original trust not vested and that alone, is to be divided for the benefit of the other children. There is no suggestion or permission of inference that on the death of a second or third child there is to be included in the " fund " thus to be distributed any subshare received from prior deceased brothers or sisters.

These considerations we believe justify us in refusing to interpret the clause that the four subshares created on the death of a child shall be held for each " for the same uses and subject to the same conditions " as "their share of the (my) residuary estate," as meaning that on the death of a second child, for instance, the principal of his particular fund not vested *and* the subshare received from his predeceased

brother or sister are to be subdivided into three shares and so on. We think, on the other hand, that we may treat this language "for the same uses and subject to the same conditions" which were prescribed for each child's original share of the residuary estate as satisfied by subjecting the subshare to the provisions for payment of income to a certain age, for vesting in the *cestui que trust* at a certain age or in his issue on prior death, and that it is not necessary to interpret it as directing a further and prohibited subdivision in the case of a further contingency so remote that the testator might reasonably have disregarded it.

While the language here under consideration is not precisely like that considered in other cases, we think that there is sufficient similarity so that our views are sustained by what was decided in *Vanderpoel* v. *Loew* (112 N. Y. 167); *Corse* v. *Chapman* (153 N. Y. 466); *Oxley* v. *Lane* (35 N. Y. 340).

The views thus expressed dispose of both of the questions submitted for our decision. If we had been compelled to hold that the particular provision in controversy did provide for an unlawful suspension of the power of alienation, and, therefore, was void, we should have found no trouble in further holding that it could be detached and separated from the other provisions creating and defining the trust, and that such other provisions and the trust as created and limited by them could be saved from destruction and enforced. A complete and lawful trust is created before we encounter the provision which is challenged. The latter provides for a limitation over in the event of a single and entirely distinct and disconnected contingency, and there is abundant authority for the proposition that under such circumstances an invalid clause, although one of several employed in the creation of a single trust, may be eliminated and disregarded and the trust otherwise sustained. (*Savage* v. *Burnham*, 17 N. Y. 561, 572; *Oxley* v. *Lane*, 35 N. Y. 340; *Tiers* v. *Tiers*, 98 N. Y. 568; *Smith* v. *Chesebrough*, 176 N. Y. 317, 323.)

These views lead to a reversal of the order appealed from and of the interlocutory judgment, and to a new trial, with

costs to appellants, and to an answer of the first question certified to us in the affirmative, the necessity for an answer to the second question being obviated.

CULLEN, Ch. J., EDWARD T. BARTLETT, VANN, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Order reversed, etc.