## CHASTAIN v. DICKINSON et al.

(Supreme Court, Appellate Division, First Department.   June 3, 1910.)

1. PERPETUITIES (§ 6*)—RESTRAINTS OF ALIENATION.

The validity of a provision of a will under the statute prohibiting the suspension of alienation for more than two lives depends on what might have happened since testator's death, and not what actually happened, and it is not sufficient that the estate may be terminated within the prescribed period, even though the possibility that it may extend beyond that period is remote.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4, 5; Dec. Dig. § 6.*]

2. WILLS (§ 858*)—CONSTRUCTION—INTESTATE PROPERTY.

The thirteenth clause of a will bequeathed a certain sum in trust to pay the net income to testatrix's daughter for life; the principal, at her death, to become a part of the residuary estate and be equally divided between the residuary legatees. The fourteenth clause bequeathed one-fifth of the residuary estate in trust to pay over the profits to son R. for life; the principal, at his death, to again become a part of the residuary estate and be equally divided among the surviving residuary legatees. Another one-fifth part of the residuary estate was given in trust for son E. upon identical terms. The same clause further bequeathed one-fifth of the residuary estate in trust for testatrix's daughter during her life, and provided that upon her death the profits should be paid to the daughter's grandson, if living, until he was 25 years old, and then to convey the said trust estate to him; but, if he died before that age without surviving issue, the principal of said trust estate should, on the death of him and the daughter, again become a part of the residuary estate and be divided among the surviving residuary devisees, subject to the same terms and conditions as provided for the several one-fifth portions thereof. One-fifth of the residuary estate was bequeathed absolutely to each of the sons W. and H. Personal Property Law (Cons .. Laws, c. 41) § 11, prohibits the absolute ownership of personalty from being suspended by any limitation or condition in a will for more than two lives in being at testator's death. Held, that testatrix died intestate as to the subshare going to R. from the reversion of E.'s share in the event that R. died after E., as the will made no disposition of such subshare, and did not provide that it should be added to the principal share given the other life beneficiaries, and the same was true of the subshares which might come to the daughter upon the death of either of her brothers and as to the special legacy given in trust for her by the thirteenth clause.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2178; Dec. Dig. § 858.*]

3. WILLS (§ 473*)—CONSTRUCTION—PARTIAL INTESTACY—EFFECT.

Such ultimate intestacy as to two-fifths of the residuary estate is not such a failure of the general scheme of the will as to invalidate the whole residuary clause.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 992; Dec. Dig. § 473.*]

4. PERPETUITIES (§ 6*)—RESTRAINTS ON ALIENATION—SUSPENSION OF ABSOLUTE OWNERSHIP.

The bequest of one-fifth in trust for the daughter for life and upon her death to her grandson, to be conveyed to him when he became 25 years old and to go to the surviving residuary legatees if he died before that age, is invalid as suspending the absolute ownership of at least one-twentieth of the residuary estate for three lives in the event the grandson should survive testatrix's daughter, but die without issue before the

age of 25, since R. and E., if then living, would each take a life interest in one-fourth of the share given for the daughter's benefit.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 5; Dec. Dig. § 6.*] .

5. WILLS (§ 81*)—CONSTRUCTION—PARTIAL INVALIDITY.

Where testator's general plan may be preserved, the invalidity of certain provisions does not vitiate the whole will, and the elimination of the possible life estate of R. and E. in 5 or possibly 10 per cent. of the residuary estate, in order to reject the invalid provisions, would not destroy the scheme of the will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. § 81.*]

6. WILLS (§ 849*)—LAPSED LEGACIES—TIME OF DEVOLUTION.

The devolution of a lapsed legacy takes place when the legacy lapses, and not upon testator's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2165, 2166; Dec. Dig. § 849.*]

Appeal from Special Term, New York County.

Action by Mary T. Chastain against Hunt T. Dickinson and others. Judgment for plaintiff. Defendant Dickinson appeals. Reversed, and judgment entered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

J. Markham Marshall and Alton B. Parker, for appellant.

John Brooks Leavitt, for respondent Henry M. Tilford.

. George Gordon Battle, for respondent Chastain.

Edward B. Hill, for respondent Keferstein.

Michael E. Kirtland, for respondent Frank B. Tilford.

Stuart G. Gibboney, for respondent Richard C. Tilford.

SCOTT, J.   This appeal presents the question of the validity of certain trust provisions contained in the will of Catherine Hunt Tilford, deceased.   The provisions called in question involve the disposition of the residuary estate, consisting wholly of personalty, and amounting, as it is said, to over $800,000.

The testatrix at the time of her death was a widow, nearly 80 years of age.   She left, her surviving, one daughter, the plaintiff herein, a widow with an infant grandson Hunt Tilford Dickinson, who is one of the proposed beneficiaries of his great-grandmother's bounty; two grandchildren, Frank V. Tilford and Elizabeth T. Keferstein, children of a deceased son; four sons, Richard C., Wesley H., Edward A., and Henry M. Tilford, of whom Richard, Wesley, and Edward were unmarried at the date of the death of the testatrix.   Wesley and Edward have since died.   The grandchildren Frank V. Tilford and Elizabeth T. Keferstein, received legacies of $5,000 each, but do not participate in the residuary estate for the reason stated by the testatrix in her will. The disputed clauses are the thirteenth and fourteenth, which read as follows:

"Thirteenth. I bequeath ten thousand dollars to my trustees hereinafter named, or the survivor of them, in trust to invest, reinvest and manage the same; collect the issues and profits thereof, and pay the net income thereof, quarterly, to my daughter, Mary Trotter Chastain, during her life and upon her death, the principal shall again become a part of my residuary estate, and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

shall be divided equally between the devisees of said residuary estate in accordance with the terms and conditions hereinafter provided.

"Fourteenth. I devise and bequeath all the rest, residue and remainder of my estate, real and personal as follows: I devise and bequeath one equal fifth part thereof to my trustees hereinafter named, or the survivor of them in trust to enter into possession thereof, to invest, reinvest and manage the same, collect the rents, issues and profits thereof and pay the said rents, issues and profits quarterly to my son Richard Curd Tilford, during his life, and upon his death the principal shall again become a part of my residuary estate and shall be divided equally between the remaining devisees of said residuary estate, subject to the same terms and conditions as are herein provided for the several one-fifth portions thereof.

"I devise one equal one-fifth part thereof to my trustees hereinafter named, or the survivor of them, in trust to enter into possession thereof to invest, reinvest and manage the same, collect the rents, issues and profits thereof and pay the said rents, issues and profits quarterly to my son Edward Alfred Tilford, during his life, and upon his death the principal shall again become a part of my residuary estate and shall be divided equally between the remaining devisees of said residuary estate, subject to the same terms and conditions as are herein provided for the several one-fifth portions thereof.

"I devise and bequeath one equal fifth part thereof to my trustees hereinafter named, or the survivor of them, in trust to enter into possession thereof, invest and reinvest and manage the same, collect the rents, issues and profits thereof and pay the said rents, issues and profits quarterly to my daughter Mary Trotter Chastain during her life, and upon her death to pay the rents, issues and profits quarterly to my great-grandson Hunt Tilford Dickinson, if he is living, until he is twenty-five years of age, and when he shall arrive at the age of twenty-five years, my said trustees shall convey and pay over to him, the said Hunt Tilford Dickinson, the said trust estate. If, however, he shall die before he arrives at the age of twenty-five years, without lawful issue him surviving, the principal of said trust estate shall, on his death and the death of my said daughter, become again a part of my residuary estate and shall be divided equally among the devisees of my residuary estate, subject to the same terms and conditions as herein provided for the several one-fifth portions thereof.

"I devise and bequeath one equal fifth part thereof to my son Wesley Hunt Tilford and his heirs; I devise and bequeath one equal fifth part thereof to my son Henry Morgan Tilford and his heirs.

"The reason I have not devised any of my estate except as above to the children of my deceased son J. B. Tilford, is because of his wish that I should not do so, he stating that his children would inherit from him all he desired they should have."

The controlling purpose of the testatrix in the disposition of her residuary estate is very evident. She desired that her daughter and each of her four sons should share equally in the enjoyment of the estate during their respective lives. As to the daughter and the sons Edward A. and Richard C., she proposed to limit their enjoyment to the use of the income; the whole principal ultimately going to the sons Wesley and Henry, and their heirs, and the great-grandson, Hunt Tilford Dickinson. The criticism made upon this attempted disposition is that it violates, or in certain contingencies may violate, the provisions of law now embodied in section 11 of the personal property law (chapter 45, Laws 1909 [Consol. Laws, c. 41]) that:

"The absolute ownership of personal property shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance and until the termination of not more than two lives in being at the date of the instrument containing such limitations or conditions; or, if such instrument be a will, for not more than two lives in being at the death of the testator."

As the residuary clause stands, if it must be construed as the respondents construe it, there is certainly a possibility that it might be

found to violate the rule above quoted. That such a possibility is remote would not be sufficient of itself to save the will, for in determining the validity of a will we are bound to observe two elementary principles, often stated, and but recently reiterated with emphasis by the Court of Appeals. These are: First, such validity must be determined, not in the light of what has actually transpired, but from exactly the same point of view from which it would be regarded had a suit been brought to determine the validity of the will at the time of the death of the testator, instead of at a subsequent period. That is to say, the validity of a will depends, not on what has happened since the death of the testator, but on what might have happened. Second. In determining the validity of limitation of estates under the statutes with reference to absolute ownership and restraint of alienation, it is not sufficient that the estates attempted to be created may, by the happening of subsequent events, be terminated within the prescribed period, if such events might so happen that such estates might extend beyond that period. In other words, to render such future estates valid, they must be so limited that in every possible contingency they will absolutely terminate at such period, or such estates will be held void. Matter of Wilcox, 194 N. Y. 288–295, 87 N. E. 497; Schettler v. Smith, 41 N. Y. 328–334.

It so happens that, since the death of the testatrix, one of her sons, Edward A., to whom was given a life interest in the residuary estate, has died, and, according to the terms of the will, upon his death the principal of the sum given in trust for his benefit again became a part of the residuary estate, "and shall be divided equally between the remaining devisees of said residuary estate, subject to the same terms and conditions as are herein provided for the several one-fifth portion thereof." That is to say, the share held in trust for Edward A. is to be divided between Mrs. Chastain, Richard C. Tilford, Wesley H. Tilford, and Henry M. Tilford; the terms and conditions attached to the gifts being that Mrs. Chastain and Richard shall enjoy only the income of their shares, the trustees holding the principal, while Wesley and Henry take their shares outright. Up to this point the attempted disposition is perfectly valid. The possible invalidity comes afterwards. Suppose that Richard C. Tilford, the other son holding a life interest in one-fifth of the residuary, dies next. The trustees will hold for his benefit at the time of his death his original share of one-fifth, and the subshare of one-quarter of Edward's share. The will makes no disposition of this subshare upon the termination of the second life interest. The will by its terms provides only for a division and distribution of the original share given for the life of each of the children to whom life interests are given. It is not expressly provided, and we are not called upon to so construe the will, that the subshares arising upon the termination of one life estate shall be added to and become a part of the principal share given by the will to the other life beneficiaries. Schey v. Schey, 194 N. Y. 368, 87 N. E. 817; Vanderpoel v. Loew, 112 N. Y. 167, 19 N. E. 481.

In case then of Richard's death, after that of Edward, the terms of the will will be sufficiently, and indeed precisely, complied with if the

principal fund originally set apart for Richard be divided between Mrs. Chastain, Wesley, and Henry, or the respective heirs of the two latter, leaving the subshare which came to Richard upon the death of Edward undisposed of. As to th⌐ ᴜbshare, after the death of Richard, being one-twentieth of the ᴀduary estate, the testatrix wittingly or unwittingly died intestatᴇ

The same rule applieꜱ ᴊ the subshares which may come to Mrs. Chᴀ ᵗain upon the deaᵗ⌐ ᴊf either of her brothers Richard or Edward. Each ⌐ the provisiʳ ꜱ for Richard, Edward, and Mrs. Chastain reads alike. ᴜ e-fifth⌐ ᴜ the estate is given to the trustees, to hold the same and pay tᴜ ⁱʳ⌐ome to the named beneficiary. What is to be divided upon his ᴄ⁀\ ʳ death is "the principal," meaning obviously the principaᶦ of thᴜ ʰare originally set apart. The will certainly does not ꜱʳ ʲ in words ᵗt the subshares resulting from such a division shᴄ⌐ᵢ ᴏe added to oᴉ ᴏecome a part of "the principal" held for either of the life beneficiaries, and it would require a strained and forced construction so to read it, and one which would result in the total destruction of the whole residuary clause. So in the case of Mrs. Chastain, what is to go to her grandson upon her death is not the subshares which may have come to her from her brothers, but "the said trust estate," meaning obviously the one-fifth of the residuary estate which was originally set apart for his grandmother. Any subshares which may have come to her from her brothers are not disposed of, after her death, by the will of Mrs. Tilford.

The result of this construction is to pronounce ultimate intestacy as to two-fifths of the residuary estate, but such intestacy is the result of the language used by the testatrix, and not of any forced construction. It may be that it was unintentional on her part; but, even if it was, it does not so far destroy the general scheme of her will as to require the rejection of the whole residuary clause. There is still left the equal division of her estate into five parts for the benefit of her five children, the enjoyment during life by three of the children of the share allotted to him or her, with the possible enjoyment of a subshare out of the share allotted to another; the enjoyment in absolute possession of one-fifth each by two sons, with the possible enjoyment of the subshare allotted to another; and, finally, the ultimate enjoyment by the great-grandson of the one-fifth share allotted to his grandmother for her life. So long as the general scheme can be carried out, the fact that it may be found in the end that, as to a minor portion of her estate, the ᵗᵉ⌐tatrix has died intestate, does not materially interfere with her general plan. As the devolution will be deemed to take place when the legacy lapses, rather than upon the death of the testatrix (Savage v. Burnham, 17 N. Y. 561–574), it is impossible to say now how far this possible intestacy will depart from what we may presume to have been the desire of the testatrix as to the final vesting of her estate. What has been said as to the fourteenth clause applies equally to the special legacy in trust for the benefit of Mrs. Chastain provided for in the thirteenth clause.

There is one possible contingency in which the will, as drawn, might produce an illegal suspension of the absolute ownership of a fraction

of·the residuary estate. It relates to the disposition of the·one-fifth to be held for the life of Mary Trotter Chastain. As to this share, if Hunt Tilford Dickinson should survive his grandmother, but should die without issue and before attaining the age of 25 years, the will requires that the one-fifth share shall be divided equally among the devisees of the residuary estate, "subject to the same terms and conditions as herein provided for the several one-fifth portions thereof." The proper construction of this clause, as already pointed out, is that in the contingency supposed Richard and Edward, if then living, would each take a life interest in one-quarter of the share set apart for the benefit of Mary Trotter Chastain. Thus, as to one-twentieth, or perhaps two-twentieths, of the residuary estate, the will seems to provide for a possible suspension of. the absolute ownership for three lives, viz., those of Mary Trotter Chastain, Hunt Tilford Dickinson, and either Richard or Edward Tilford.

There is no legal obstacle to the suspension of absolute ownership during the successive lives of Mary Trotter Chastain and Hunt Tilford Dickinson, nor to the division of the share among the sons of the testatrix upon the death of both Mrs. Chastain and her grandson, and, if upon the death of these two the share was directed to be divided between and paid over to the four sons of the testatrix absolutely, the provision would be unassailable. The illegality consists in providing, as we think the will clearly does, and as the testatrix undoubtedly intended that it should, that Richard and Edward Tilford should take only a life interest in, and not the absolute ownership of, their several subshares of the share set apart for the benefit of Mrs. Chastain. This suggests the question whether or not the illegal provision may be deleted without so far destroying the scheme of the will as to require its entire rejection. It is a well-established rule of law in this state that, where the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but, when it is possible to cut out the invalid provisions so as to leave intact the parts that are valid and to preserve the general plan of the testator, such a construction will be adopted. As was recently said by the learned judge who wrote for the Court of Appeals in Schey v. Schey, supra, speaking of a will containing many features similar to those in the will at bar:

"If we had been compelled ito hold that the particular provision in controversy did provide for an unlawful suspension of the power of alienation, and therefore was void, we should have found no trouble in further holding that it could be detached and separated from the other provisions creating and defining the trust, and that such other provisions and the trust as created and limited by them could be saved from destruction and enforced. A complete and lawful trust is created before we encounter the provision which is challenged. The latter provides for a limitation over in the event of a single and entirely distinct and disconnected contingency, and there is abundant authority for the proposition that under such circumstances an invalid clause, although one of several employed in the creation of a separate trust, may be eliminated and disregarded and the trust otherwise sustained."

These words are directly apposite to the invalid provision contained in the present will. It is true that they may be said to be obiter, because the disputed provisions in the will then under discussion were

found to be valid, but they are supported by a long line of precedents. See Savage v. Burnham, 17 N. Y. 561; Oxley v. Lane, 35 N. Y. 340; Tiers v. Tiers, 98 N. Y. 568; Smith v. Chesebrough, 176 N. Y. 317, 68 N. E. 625; Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917, and the cases therein cited and discussed. The effect of exercising this power is not to make a new will for the testator, but to sustain the will in its general scope and purpose, and prevent a complete thwarting of the testator's intentions by reason of a minor and unimportant defect. It is manifest that the excision of the possible life estate of Richard and Edward in 5 per cent. or even 10 per cent. of the residuary estate will not materially destroy the scheme which the testatrix had in mind. The attempted illegal disposition may therefore be disregarded.

It follows that the judgment appealed from must be reversed, and a judgment entered in accordance with the views expressed in this opinion, with costs payable out of the estate to all parties who have separately appeared and filed briefs. All concur.