TUCKER and wife *vs.* BALL and others.

Where a testator devised his real and personal estate to his wife for life, or during her widowhood, and directed his executors, after her decease, or marriage, to sell his real estate, the avails of which he gave and bequeathed as follows: one half thereof to be equally divided amongst the children of J. and P. T., and the other half between J. R., A. R. and J. R.; and A. R. died previous to the death or marriage of the widow, and before the sale of the real estate; *Held* that his share of the avails of the real estate became vested in him immediately upon the death of the testator, although not payable until after the sale. And that upon the death of A. R. unmarried and intestate, such share did not belong to the heirs of the testator, as a lapsed legacy, but to the representatives of A. R.

Legacies payable at a future day are vested, or contingent, according to the intention of the testator.

Tucker *v.* Ball.

In many cases, words of doubtful import in a will have acquired a meaning by legal interpretation. When that has been uniform, it becomes a rule of law; and it should govern all cases in which it is applicable, although it may be against the apparent intention of the testator. For it is better that the wishes of an individual should be defeated, in a particular instance, than that a rule of law established for the general good, should be varied in its application.

As a general rule, it is fair to presume that a testator intends to give something, absolutely, to the persons named as legatees.

That inference should be conclusive, unless a condition is clearly annexed to the gift, or can be plainly inferred.

Courts of justice generally lean that way, from a disposition to carry into effect the will of the testator.

Where the words in a will, denoting a gift, are in the present tense, but the direction for the payment is in the future, the fair import of the language is that there is a present gift, of moneys, to be paid thereafter.

A direction for a division of an estate among several persons, by the executors, is equivalent to a direction for the payment, to the legatees, of their respective shares.

In such cases the interest is vested, and transmissible.

The rule that a testator is to be deemed to have intended that the same words, used in different parts of his will, should convey the same interests, is a sound one; and wills should be construed accordingly.

Where a testator directs that his executors shall sell his lands immediately after his decease, and pay the interest of the avails to his widow until her marriage, or death, and then divide the avails between certain legatees, the bequests to such legatees will vest immediately.

And the fact that the use of the land is devised to the widow of the testator, and the sale postponed to the time of her death, or marriage, will not make any substantial difference in the rights of the legatee. Nor will the circumstance that the legacy is to be raised by a future sale of real estate, vary the construction of the will; where the sale is postponed on account of the estate for life in the widow, and not with reference to the circumstances of the legatee.

In Equity. Jacob Lewis, of Munroe in the county of Orange, by his will dated on the 23d day of July, 1820, amongst other things, devised and bequeathed as follows: " I give and bequeath to my wife Eunice Lewis all my real and personal estate, except such of my personal estate as is hereinafter otherwise bequeathed, whether it consist of lands and tenements, goods and chattels, or moneys due to me on bonds, notes or otherwise, for her own use and benefit so long as she remains my widow, or during her natural life." And after giving a legacy of five dollars to his daughter Polly Tucker, to be paid when she should call for it, and another of $100 to his grand-

Tucker v. Ball.

daughter Mary Tucker, to be paid when she should arrive at the age of twenty-one years, in money, the will proceeds as follows: "4th. It is my will that after the decease or marriage of my widow Eunice Lewis, that my executors should sell, and I hereby authorize them to sell, all my real estate to the best advantage, the avails of which I give and bequeath in the following manner, viz. one half of the money arising from the sale of my lands to be equally divided by my executors amongst the children of Joshua and Polly Tucker; the other half of such moneys to be equally divided by my executors between John Rednor, James Rednor and Abraham Rednor. 5th. I give and bequeath unto Jacob L. Rednor, son of Peter Rednor, the sum of fifty dollars, to be paid to him by my executors whenever he shall arrive at the age of twenty-one years." And he appointed his wife Eunice Lewis executrix, and James Ball and Joseph R. Andrews executors.

The testator died on the 1st of August, 1820. The executrix and executors soon afterwards proved the will. Polly Tucker, named in the will, was the only legitimate child and heir at law of the decedent. John Rednor, James Rednor and Abraham Rednor were his illegitimate children by one Catharine Rednor. Abraham Rednor died on the 12th of May, 1829, intestate, and never having had any children or been married, leaving him surviving his mother, the said Catharine Rednor, and her natural children the said John Rednor and James Rednor, and also Daniel Rednor, Peter Rednor and Abigail Compton, wife of Stephen Compton.

Eunice Lewis, the testator's widow, never married again, and died in May, 1845. On the 2d of April, 1846, the other executors sold and conveyed the real estate of the testator for $5328. They paid the one half of the net avails to the children of Joshua and Polly Tucker, the one-sixth part to John Rednor, another sixth part to James Rednor, and they retained the sixth part bequeathed to the deceased Abraham Rednor.

The plaintiffs, in right of the said Polly Tucker, as the only heir at law and next of kin of the testator, claimed the last mentioned sixth part, as a lapsed legacy. And as the execu-

Tucker *v.* Ball.

tors declined paying it to them, they filed their bill in this cause against the executors, and Catharine Rednor, Daniel Rednor, John Rednor, James Rednor, Peter Rednor, and Stephen Compton and Abigail his wife, to obtain it. The executors answered, submitting the matter to the court. Catharine Rednor, John Rednor and Peter Rednor also answered, but did not deny any material allegation in the bill. The bill was taken *pro confesso* against the other defendants. The case came before the court on the bill and answers.

*S. J. Wilkin,* for the complainants.

*J. W. Brown,* for the defendants.

STRONG, J. Legacies payable at a future day are vested, or contingent, according to the intention of the testator. Ordinarily, such intention is clearly manifested by the language in the will. But it sometimes happens that the phraseology is obscure, or that the testator has used terms in a sense different from that generally given to them; or that he wishes to accomplish objects so inconsistent with each other that all cannot prevail. In such cases, it is difficult to arrive at a satisfactory conclusion; and it is not at all surprising that the decisions have conflicted with each other. Where the meaning of the words is clear, and there is no inconsistency in the various provisions of the will, there can be no difficulty in giving it the proper construction. In many cases words of doubtful import have acquired a meaning by legal interpretation. When that has been uniform it becomes a rule of law, and it should then govern all cases in which it is applicable; although it may be against the apparent intention of the testator; as it is better that the wishes of an individual should be defeated, in a particular instance, than that a rule of law, established for the general good, should be varied in its application.

As a general rule, it is fair to presume that a testator intends to give something absolutely to the persons named as legatees. That inference should be conclusive, unless a condition is clearly

---

Tucker *v.* Ball.

---

annexed to the gift, or can be plainly inferred. Courts of justice generally lean that way, from a disposition to carry into effect the will of the testator. (9 *Ves. Rep.* 229.) Probably the actual intent has often been defeated where it has been decided from legal construction, and not from the express words, that the legacy is contingent, but seldom if ever, where the decision has been the other way.

In the case now under consideration, the words denoting the gift are in the present tense, " I give and bequeath " the avails of the real estate ; but the direction for the payment is in the future ; " to be equally divided " by the executors among the legatees. The fair import of the language is, that there was a *present* gift of moneys, to be paid thereafter; the direction for a division being equivalent to a direction for the payment. (*May* v. *Wood,* 3 *Bro. C. C.* 47.) In such cases the interest is vested, and transmissible. (13 *Ves. Rep.* 113.) It makes no difference that the money is not payable, and could not be demanded, until a future and perhaps distant period. In some respects it is like a bond for the payment of money at a future day : it is *debitum in presenti* though *solvendum in futuro.* That the person who drew the will knew the distinction between the time of the gift and the time when it should be paid is evident from the next clause in the will, where the same words are used, " I give and bequeath unto Jacob L. Rednor the sum of fifty dollars ;" and the same direction as to the payment in future, " to be paid to him by my executors whenever he shall arrive at the age of twenty-one years." That legacy clearly vested immediately after the death of the testator, although it was payable afterwards. The rule that a testator is to be deemed to have intended that the same words used in different parts of his will should convey the same interests is a sound one, and wills should be construed accordingly. There is, it is true, a difference between the two legacies here, inasmuch as the last is of money having an existence at the time of making the will, whereas the other is of avails to be raised at a future period. But that does not affect the principle. It is a right to receive the thing given, at a future period, which

Tucker *v.* Ball.

vests immediately.   The change in the form or description may affect the payment, but not the right.  (*Smither* v. *Willock,* 9 *Ves. Rep.* 233.    *Hatch* v. *Mills,* 1 *Eden's Rep.* 342.)

No condition is annexed to the gift ; nor is there any thing to show that the testator intended that it should be contingent. There is no provision that in case of the death of either of the legatees, previous to the decease or marriage of the widow, his portion should go to his children, if he should have any, or to the survivors, if he should die childless.   If the legacy should lapse, it could belong to neither.   This could never have been the design of the testator.   The same feeling which prompted him to make the donation to his offspring would have induced him to extend it to their children, by an express provision, had that been necessary.   His mind would have revolted at the idea of their being left, perhaps at a tender age, without the means of subsistence.   There can be no doubt but that the actual intention of the testator was that the right to the legacies in question should vest immediately upon his death.   That intention should be carried into effect, unless it is opposed by some settled rule of law.   I have not been able to discover any such ; but on the contrary the decisions, so far as they apply, favor the construction which I am disposed to give to this will.

The cases are clear that if the testator had directed that his executors should sell his lands immediately after his decease and pay the interest of the avails to his widow until her marriage or death, and then divide such avails between the legatees designated by him, the bequests to them would have vested immediately.   (*Smither* v. *Willock,* 9 *Ves. Rep.* 233.   *Walker* v. *Shore,* 15 *Id.* 122.)   The fact that the use of the land is devised to the widow, and the sale postponed to the time of her death or marriage, cannot make any substantial difference in the rights of the legatee.   Nor can the circumstance that the legacy is to be raised by a future sale of real estate vary the construction of the will, so long as the sale was postponed on account of the estate for life in the widow, and not with reference to the circumstances of the legatees.   In *Bayley* v. *Bishop,* (9 *Ves. Rep.* 6,) William Bayley devised his lands to his wife

Tucker *v.* Ball.

during life, and at her decease to trustees to sell, and with the moneys arising therefrom to lay out £500 in the purchase of an annuity for his son Thomas during his life, which he was to be permitted to receive. Thomas died in the lifetime of the widow. The master of the rolls said, " taking this to be a pecuniary legacy, the question is whether it fails by the death of Thomas Bayley during the life of the widow. I am of opinion it does not." He lays much stress upon the position that if the wife had died before the testator, the trust must have been immediately executed, upon his death, the estate sold and the money paid, and says that it was merely on account of the estate for life in the widow, and not with reference to the circumstances of the legatees, that the sale and payment were postponed. In *Dawson* v. *Killett*, (1 *Bro. C. C.* 119,) Doctor Mitchell gave certain lands to his wife during life, and if there should be no issue between them, to the defendant, charged with £100 to William Ranscombe, and another legacy, both payable in six weeks after his wife's death. William Ranscombe survived the testator, but died in the lifetime of the widow. His executor filed a bill for the legacy. The lord chancellor said, there is a long string of cases which establish the rule that where a legacy is given out of a particular fund, with a reference to the time when it shall vest in possession, it is a distribution of the fund between the person to take at present and him who is to take in future; and the gift to him who is to take in future vests immediately. In *Godwin* v. *Manday*, (1 *Bro. C. C.* 190,) there was a devise to the testator's son after the decease or marriage of the testator's widow, with a proviso that he should pay to the testator's daughter Mary £300 within a year after the death of the widow. Mary died in the lifetime of the widow. It was decided that the legacy had vested.

In this case the payment of the legacy to Abraham Rednor was not postponed in reference to his situation or circumstances. If it had been, there would have been some direction that the money should not be paid until there had been a change in one or the other. But there is not a word to that effect in the will. On the contrary, the money was to be paid to him on the death

Tucker *v.* Ball.

or marriage of the widow, whenever that should happen, and whatever might be his situation or circumstances at the time. But the payment was postponed, as was said by the master of the rolls in *Bayley* v. *Bishop,* " on account of the estate for life in the widow." There may be a difference between cases where land is devised to executors at the termination of a particular estate, in trust to sell, and where they have simply a power to sell. But the technical rule relative to remainders is requisite to convey a present vested interest only in case where that is not done by the express terms of the will. Here the will is express to that effect. That too renders it unnecessary to consider whether as the property given to the legatees is the avails of the whole estate, it is not in effect equivalent to a remainder, and subject to the same rules. The case of *Sharpsteen* v. *Tillou,* (3 *Cowen,* 651,) which was cited on the argument, by the plaintiff's counsel, is inapplicable. The bequests which came in question there were not of the whole fund which had been given to another for life, nor, as was observed by the counsel for the prevailing party, was it necessary to decide the question whether such legacy was vested or contingent, as it could make no difference in the decision of the case. Consequently the question was not much discussed by the counsel, or considered by the court, and the opinions of the supreme court and of the chancellor not being upon a point essential to the decision of the case, cannot have any controlling influence here.

Upon the whole, my opinion is that the legacy of the one-sixth part of the avails of the testator's real estate to Abraham Rednor, payable when such real estate should be sold, vested in him immediately upon the death of the testator, and that the plaintiffs not being his heirs at law, or next of kin, have no interest in such legacy.

The bill must be dismissed with costs to the executors, but not to the other defendants.