(Surrogate's Court, New York County. November 12, 1912.)

1. WILLS (§ 487*)—CONSTRUCTION—EXTRINSIC FACTS.
    Where a will creating a trust for the benefit of testator's wife for life, and providing for the payment of legacies, is clear, but its legal effect is in doubt, the extrinsic facts disclosing the situation of testator's family at the time of the execution of the will and the codicil thereto, and at the dates of the death of testator and his widow, may be shown not in aid of the discovery of testator's intention, but to ascertain whether the intention discoverable embraces the situation disclosed.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1023, 1026–1032; Dec. Dig. § 487.*]

2. WILLS (§ 631*)—CONSTRUCTION—VESTED ESTATES—STATUTORY PROVISIONS.
    Future interests in personal property created by will are by Personal Property Law (Consol. Laws 1909, c. 41) § 11, subject to the rules regulating future interests in lands.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1481, 1482, 1485; Dec. Dig. § 631.*]

3. WILLS (§ 630*)—CONSTRUCTION—VESTED ESTATES—INTENTION OF TESTATOR.
    The rule that, where the only gift in a will is contained in a direction to pay or distribute at a future day, time is the essence of the gift, and

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the legacy is contingent, vesting being postponed until the time fixed for payment, is only a rule of construction, and is not arbitrary and inflexible, but readily yields to the slightest intention to import a present gift.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. § 630.*]

4. WILLS (§ 630*)—CONSTRUCTION—VESTED ESTATES—INTENTION OF TESTATOR.
   Where a will is silent as to the period of vesting, the gift is vested immediately on the will coming into operation, when it appears that the enjoyment of the legatee is postponed merely for the convenience of the estate, or to let in an intervening interest.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. § 630.*]

5. WILLS (§ 631*)—CONSTRUCTION—VESTED ESTATES—INTENTION OF TESTATOR.
   The vesting of legacies is most favored in the construction of wills, particularly under the statute subjecting limitations of future or contingent interests in personal property to the rules governing future estates in real property.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1481, 1482, 1485; Dec. Dig. § 631.*]

6. WILLS (§ 630*)—CONSTRUCTION—VESTED ESTATES—INTENTION OF TESTATOR.
   The rule that, where the only gift in a will is contained in a direction to pay at a future day, time is the essence of the gift, and the legacy is contingent, is founded on a presumption, and is a stated exception rather than a principal rule of construction, and depends on a presumed intent of testator to make time the essence of the testamentary gift; and the presumption is rebutted by the slightest evidence of a contrary intent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. § 630.*]

7. WILLS (§ 630*)—CONSTRUCTION—VESTED ESTATES.
   Testator gave his residuary estate in trust to pay to his wife a specified sum annually for life, and declared that on her death the following legacies should be paid, $25,000 to his brother D., $100,000 to his brother G., and, if he died before testator, his eldest son should have the sum, $75,000 in equal parts to sons of G., with gifts over in case of their death before the death of the wife, etc. By codicil executed after the death of G., the $100,000 was directed to be paid to his eldest son on specified conditions. D. was at the time of the execution of the will an old man, and childless. Held, that the legacy to D. vested at testator's death.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1464–1480, 1486, 1487; Dec. Dig. § 630.*]

8. WILLS (§ 456*)—CONSTRUCTION—MEANING OF LANGUAGE.
   The conventional meaning given to phrases regulating the quantity or the quality of interests intended to be conferred by will, will not be departed from in the construction of a will, unless the intent of testator so to do is obvious.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 974; Dec. Dig. § 456.*]

9. WILLS (§ 435*)—"RULES OF CONSTRUCTION"—"RULES OF INTERPRETATION."
   There is a difference between rules governing the interpretation of wills and rules governing their construction, and rules of construction are local in origin and operation, while rules of interpretation are universal, and there can be no judicial construction of a will in a doubtful case until the interpretation of the meaning of the words thereof is ascertained as a matter of fact.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 946; Dec. Dig. § 435.*

For other definitions, see Words and Phrases, vol. 7, p. 6274.]

In the matter of the judicial settlement of the account of the United States Trust Company of New York, as trustee of the trusts created by the will of William C. Egleston, deceased. Decree ordered.

Stewart & Shearer, of New York City, for trustee.

Parsons, Closson & McIlvaine, of New York City (H. B. Closson, of New York City, of counsel), for executors and trustees.

Francis A. Appleton, of New York City (Bronson Winthrop, of New York City, of counsel), for residuary legatees.

FOWLER, S. The only question submitted for determination by the surrogate arises upon the settlement of the final decree herein. This question, narrowly stated, is: Did the legacy of the testator's brother, David S. Egleston, fail by reason of the latter's death, which happened before the death of the testator's widow, the life beneficiary of the residuary trusts created by the will of William C. Egleston, or was it so vested in David S. Egleston as to pass to his personal representatives upon his death prior to that of the testator's widow?

The only facts before the surrogate are contained in an agreed statement of facts, which is as follows:

### Agreed Statement of Facts.

William C. Egleston, a resident of the borough of Manhattan, city of New York, died in said borough on March 25, 1907. His will was executed in the city of New York April 5, 1900. The codicil to his will was executed February 26, 1906. The will and codicil were admitted to probate as a will of real and personal property by the Surrogates' Court for the county of New York on June 3, 1907, and letters testamentary thereon were granted on June 4, 1907, to the United States Trust Company of New York, the executor named therein.

William C. Egleston was the fourth of the six children of Thomas E. Egleston and Sarah Jesup Egleston. His brother David S. Egleston was born November 22, 1830, and was the eldest of the family. Prior to 1867 he married Fanny Hawley, who was born in April, 1832. The only issue of this marriage was a son, who was born in 1867, and lived but a few months. David S. Egleston was at the time of the execution of the will in his seventieth year, at the time of the execution of the codicil in his seventy-sixth year. He survived the testator, dying January 1, 1908, but predeceased the life tenant, the testator's widow, who died December 23, 1911. He left an estate of a net value of over $300,000. Mrs. David S. Egleston was at the time of the execution of the will 68 years of age; at the time of the execution of the codicil in her seventy-fourth year. She is still alive.

Thomas Egleston, the second child, died January 5, 1900, prior to the execution of the will, without ever having had any issue. He was predeceased by his wife.

Sarah Elizabeth Egleston, the third child, was born August 7, 1837. October 7, 1857, she married Charles Lanier. She died in April, 1898, leaving her surviving her son, James F. D. Lanier, born in

1858, and his wife and issue; her two grandchildren, Charles Lanier Lawrance, born in 1882, and Kitty Lanier Lawrance, born in 1893, the only children of a deceased daughter, Fanny Lanier Appleton, born in 1864, and her husband and issue; and her daughter, Elizabeth Gardiner Turnure, born in 1870, and her husband and issue. All the above survivors of Mrs. Lanier are still alive.

William C. Egleston himself, the testator, was born June 30, 1839. He married Ella Louise Bates, who was born August 22, 1841. He died March 25, 1907, in his sixty-eighth year, leaving no issue, but leaving him surviving his wife, who died December 23, 1911, in her sixty-eighth year.

George W. Egleston, the fifth child, was born September 1, 1843. September 19, 1883, he married Mary MacLean, who died August 15, 1889, leaving her surviving three sons, Thomas, born August 11, 1884, Harold, born April 15, 1886, and Vivian, born October 25, 1888. September 1, 1890, he married Amy Dorinda Abbott, who was born July 26, 1862. He died January 24, 1904, never having had any issue of his second marriage, and leaving him surviving his three sons, issue of his first marriage, and his second wife, all of whom are still alive. At the time of the execution of the will George W. Egleston was in his fifty-eighth year, his wife was in her thirty-eighth year, and his three sons were aged, respectively, 16, 14, and 12. At the time of the execution of the codicil he was no longer living. His wife was in her forty-fourth year, and his three sons were aged, respectively, 22, 20, and 18.

Henry Paris Egleston, the sixth child, died in 1886, leaving him surviving a wife and daughter, both of whom died prior to the execution of the will.

Annexed hereto is a true copy of the will and codicil of William C. Egleston, the testator.

The original will bears on the back thereof the indorsement:

"Miller, Peckman & Dixon,
"Attorneys and Counsellors,
"New York."

It was drawn by that firm, and Mr. Hoffman Miller, one of the partners, was an attesting witness:

"Dated New York, August 20, 1912.
"Stewart & Shearer.
"Attorneys for United States Trust Company of New York, trustee.
"Parsons, Closson & McIlvaine,
"Attorneys for Charles Lanier and Henry B. Closson as executors of the will of David S. Egleston, deceased.
"Francis R. Appleton,
"Attorney for Thomas B. H. Egleston and others."

The will of William C. Egleston provided as follows:

"Fifth. Unto the United States Trust Company of the City of New York, hereinafter named as the executor of this my will, I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, of whatever nature and wheresoever situate, in trust, to take, hold, invest and reinvest the same and to get in the income thereof, and after deducting from such income its proper charges and expenses in the management and care of my estate as such trustee to pay to my said wife Ella Louise Egles--

ton during her life fifteen thousand ($15,000) dollars per annum in equal quarterly or monthly installments; and in case in any year the payment of said fifteen thousand dollars to my said wife do not absorb the entire net income of my estate in any year after the deduction from and provision for all other items properly chargeable against the same as in the opinion of said trustee may be needful, then upon the further trust to pay over all the surplus income of my estate in any·year beyond such fifteen thousand dollars and such deductions annually to my brother George W. Egleston upon account of the principal of the legacies to my said brother hereinafter provided for him; and upon the further trust in case of the death of my said brother George during the lifetime of my said wife to pay over such surplus income annually to the eldest then surviving son of my said brother on account of the principal of his share or interest in the residue of my estate as hereinafter provided; and upon the further trust upon the death or remarriage of my said wife whichever shall first occur to pay the following legacies in the order in which they are named, that is to say:

"1. To pay to my brother David S. Egleston twenty-five thousand (25,000) dollars.

"2. To pay to my brother George W. Egleston, now residing at Eardsley, Herefordshire, England, or if he do not survive me, that to the eldest son of my said brother George W., living' at the time of my decease one hundred thousand (100,000) dollars.

"3. To pay seventy-five thousand (75,000) dollars in equal parts, share and share alike, to Thomas Buchanan MacLean Egleston, Harold Paterson Mac-Lean Egleston and Vivian Hector MacLean Egleston, the three sons now living of my said brother George W., and in case either of said sons shall have died before the decease of my said wife, then upon the further trust to pay said seventy-five thousand (75,000) dollars, share and share alike, to the survivors of said three sons, or the whole thereof to the one then surviving, should two of them have died.  *  *  *

"Sixth. And upon the further trust, upon the death of my said wife, whichever event shall happen first, and after payment and satisfaction of the above legacies and of all the foregoing provisions of this my will, to transfer, pay over and deliver all balance, residue and remainder of my estate of every nature and kind whatever, real or personal, and wheresoever situate in equal parts, share and share alike, to the then surviving children of my said brother George W. Egleston, or the whole thereof to the one such child then surviving, if all the others should have died before then."

## The codicil referred to in the stipulation provides as follows:

"Third. My brother George W. Egleston having departed this life leaving three sons, now residing at Saulsbury, England, I declare that the bequest made to him by my said will of surplus income during the life of my wife shall inure to the eldest son of my said brother George W. Egleston who shall be living at the time of my decease. If such eldest son shall predecease my wife, then I direct that such surplus income shall, during the life of my wife, be paid from time to time to the eldest living son of my said brother. No payment so made to any such surviving eldest son during the lifetime of my said wife out of the income of my estate shall be charged to him as payments on account of the principal of any share in the residue of my estate coming to him under my said will or this codicil.

"I direct, however, that the bequest of one hundred thousand (100,000) dollars made to my brother, George W. Egleston, after the death of my wife, shall be paid to the eldest son of my said brother who shall survive both my wife and myself.

"Fourth. I hereby modify the provisions of the sixth article of my said will so that the balance, residue and remainder of my estate remaining after the payment of the devises and bequests made by the preceding articles of my will shall be divided into four equal parts and that one of the said parts shall be transferred, paid over and delivered to my niece, Fanny Lanier Appleton, wife of Francis R. Appleton, and daughter of my deceased sister, Sarah Egleston Lanier, but if she do not survive my wife, then to her.issue per stirpes and not per capita; that another of the said parts shall be trans-

ferred, paid over and delivered to my niece Elizabeth Gardiner Turnure, wife of George E. Turnure and also daughter of my deceased sister Sarah Eggleston Lanier, but if she do not survive my wife, then to her issue per stirpes and not per capita, and that two of the said equal parts shall be transferred, paid over and delivered in equal parts, share and share alike, to the sons of my said brother George W. Egleston, other than the son who shall have received the bequest of one hundred thousand (100,000) dollars given him under the preceding provisions of my said will and this codicil; but if any such son of my said brother shall die before my wife leaving issue him surviving, then such issue shall receive his share per stirpes and not per capita. If there be no such son or issue of any such son surviving my wife, then the said two equal parts shall be transferred, paid over and delivered in equal parts, share and share alike, to my said niece Fanny Lanier Appleton, my said niece Elizabeth Gardiner Turnure and the eldest son of my said brother George W. Egleston; but if either of the same shall have died before my wife, then his or her share shall go to his or her issue per stirpes and not per capita. If there be no such issue of such deceased niece or nephew at the time of my wife's death, then the whole of the said two shares shall be divided equally among the survivors of the said nieces and nephew, or the whole thereof to the one then surviving should two of them have died."

Such are all the facts before the surrogate in this cause. The claims of the parties, based on these facts, may be briefly summarized as follows: The trustees under the will of William C. Egleston stand neutral between the contesting parties, conceding, however, that the question now to be adjudicated is not free from all doubt. On behalf of Mr. Charles Lanier and Mr. Closson, the executors of David S. Egleston, it is contended that the death of David S. Egleston before the widow of William C. Egleston was inconsequential, as the legacy of $25,000 to David S. Egleston was vested and never divested by reason of his death before the death of Mr. William C. Egleston. They consequently claim payment of the legacy. On behalf of the residuary legatees under the will of William C. Egleston it is contended with a great elaboration of authorities and on divers grounds that the legacy to David S. Egleston was contingent on his survivorship of testator's widow, or that, if vested, the title to the legacy divested on the death of David S. Egleston before the death of testator's widow and passed, under the testator's will, to the residuary legatees, who now demand payment of the $25,000 as part of the residuary.

[1] It will be observed that the paper case agreed on by counsel states only such extrinsic facts as the situation of the testator's family, at the time of the execution of his will and the codicil thereto, and at the date of testator's death, as well as at the date of the death of his widow. None of these facts contradicts the rules of construction to be applied to the language of the will, and they are all within the proper ambit of surrounding circumstances permissible to be shown in a case of this character. This is a case where the intention of the testator is to be ascertained from the language of the will itself. The extrinsic facts are not shown in aid of the discovery of the testator's intention, but for the purpose of ascertaining whether the intention discoverable in the will itself embraces the situation stated in the agreed case, and, if so, in what way. It is obvious, therefore, that this is in reality a veritable case of construction, or the application of rules of law to the language of a will tolerably clear in itself,

but the legal effect of which alone is in doubt. It is not a case of interpretation, in the true sense, as the meaning of the language of the will is not in doubt, otherwise than touching its legal effect. The surrogate apprehends that the application of rules of law is somewhat simple in a case of this character.

[2] In this state, since the Revised Statutes, questions concerning the vesting of legacies are governed by rules of law somewhat less complex than those applicable prior to that revision. Prior to that work, so justly celebrated in the history not only of this state, but by interaction, of all people subject to the common law, the rules of law applied to the vesting of estates in real property were of common law origin, but the rules applicable to the vesting of legacies were mainly of civil law origin, as modified in the ecclesiastical courts, or in chancery. This distinction affected the whole body of the former law of legacies. It was even doubted in old times whether the technical term, "vested" had any real application to property not real property at the common law. Goodeve, Real Property, 240, note. The old books of the law are replete with this controverted point, but this is made sufficiently apparent for present purposes by a reference to the more modern works of authority. Jarman on Wills (1st Ed.) 755; Hawkins on Wills, 221, 222; 1 Roper and White on Legacies (4th Ed.) 571; Theobald on Wills, 558, 559. And see Stapleton v. Cheales, 2 Vern. 673; Cousins v. Schroder, 4 Sim. 23. The revisors of the Revised Statutes—men of the highest professional attainment—were perfectly familiar with this controversy, and the surrogate entertains the opinion that it to some extent animated those anomalous statutory rules of this state which subjected the creation of all future interests in personal property to the rules of' the Revised Statutes regulating future interests in lands. 1 R. S. 772, §§ 1, 2, now section 11, Pers. Prop. Law. I have called the rules of the revisors in this respect anomalous, because the tendency of all modern law reformers is to subject the common law of real property to the influence of the rules regulating personal property. The history of the legal terms "vest" and "vested," as employed in the law concerning legacies, has been alluded to because it is referred to in the brief of counsel for the residuary legatees, but without very direct emphasis on its relation to the principles controlling this cause.

Since the statutory alteration just denoted in the common law of this state, the rules regulating the vesting of legacies and the vesting of estates have become substantially at one in this state (Yates v. Yates, 9 Barb. 324, 344; Kane v. Gott, 24 Wend. 641, 662, 35 Am. Dec. 641; Gilman v. Reddington, 24 N. Y. 13; Graff v. Bonnett, 31 N. Y. 9, 13, 88 Am. Dec. 236; Cutting v. Cutting, 86 N. Y. 547; Cook v. Lowry, 95 N. Y. 111; Cochrane v. Schell, 140 N. Y. 534, 35 N. E. 971; Stringer v. Young, 191 N. Y. 165, 83 N. E. 690), and a great body of law of domestic origin has grown up, which covers the greater portion of the topic of legacies vested or otherwise. What this state owes directly to the Revised Statutes other common-law countries have reached by a more painful process of judicial reasoning, which has substantially extended the application of the common-law rules govern-

ing the vesting of estates to the vesting of legacies and interests in personalty (Hawkins on Wills, 222; Theobald on Wills, 559; 1 Jarman on Wills [6th Ed.] p. 1397; Farmer v. Francis, 2 Sim. & Stu. 505; James v. Lord Wynford, 1 Sm. & Gif. 40).

With this general reference to the existing law regulating the vesting of legacies, we are prepared to approach the considerations which must dictate the conclusion in this cause.

[3] It is contended for the residuary legatees under the will of testator that, where the only gift in a will is contained in a direction to pay or distribute at a future day, time is the essence of the gift, and the legacy is contingent, vesting being postponed until the time fixed for payment. This rule of construction is constantly invoked in this state, and in a proper case it is frequently applied. Adjudications supporting this rule may be cited ad nauseam, but one or two will at this point, however, suffice: Warner v. Durant, 76 N. Y. 133, 136; Delaney v. McCormack, 88 N. Y. 174, 183; Shipman v. Rollins, 98 N. Y. 311, 327; Smith v. Edwards, 88 N. Y. at page 105. In the last case it was said:

"If that rule is arbitrary and inflexible it ends any further argument."

But the rule in question is not arbitrary and inflexible, and it readily yields to the slightest intention to import a present gift.

The more general and higher rules of construction in respect of the vesting of legacies are these:

[4] (1) Where the will is silent as to the period of vesting, the gift is vested immediately on the will coming into operation, whenever it appears that the enjoyment of the legatee is postponed merely for the convenience of the estate or to let in an intervening interest.

[5] (2) The vesting of legacies is now most favored in construction, particularly under the statute which subjects limitations of future or contingent interests in personal property to the rules presented in relation to future estates in real property. Dougherty v. Thompson, 167 N. Y. 483, 60 N. E. 760; Connelly v. O'Brien, 166 N. Y. 408, 60 N. E. 20; Matter of Russell, 168 N. Y. 175, 61 N. E. 166. But it was, perhaps, in this state so before the Revised Statutes. Tucker v. Ball, 1 Barb. 94. It certainly is so now. Even without reference to the express statute of this state already noticed, the common law also now favors that construction which makes a legacy vested rather than contingent. 2 Jarman on Wills (6th Ed.) 1397. The two rules just mentioned are the fundamental rules of construction applicable to questions concerning the time legacies shall be taken to vest.

[6] The rule invoked in behalf of the residuary legatees, being founded on a presumption, is a stated exception rather than a principal rule of construction, and it depends on a presumed intent on the part of testator to make time the essence of his testamentary gift. Smith v. Edwards, 88 N. Y. 105. Like all other constructions of wills founded on a presumption only, the presumption itself is easily rebutted by the slightest evidence of a contrary intent upon the part of testator.

[7] That there is some evidence on the face of the testamentary instruments now before the surrogate that it was testator's intention

that the legacy to David should vest on testator's death is perhaps apparent. In the first subdivision of the fifth paragraph of the will, the testator gives to David the legacy of $25,000 without any provision for the event that David should die before the life beneficiary. Testator must have known that his brother David was an old- man and childless, and that in all human probability he would die childless before testator's widow, yet testator did not expressly deprive David of the legacy in the event that he predeceased testator's widow. In the instance of testator's brother George, testator made a substitutional bequest to take effect in the event that George predeceased testator, thus providing for a lapse of that particular legacy. No such provision is extended to David's legacy. Again, by the third subdivision of the fifth paragraph of the will, testator gave $75,000 to the three sons of his brother George, and he expressly provided that in case either (any) of said sons died before the decease of the life beneficiary the said $75,000 should go, share and share alike, to the survivors. It may be inferred from this provision that testator's intent in respect of the legacy to his brother David was that the legacy to David should vest at testator's death, and that it should be indefeasible. But there are in law other and more conclusive considerations than a presumed intent on the part of the testator, deduced from a mere comparison of different legacies to different persons, in different language, in the same will. It is the cases which in this matter control the language of the legacy to David. There is never a reason for resorting to conjecture or inference when the fact is definite and ascertained in law. "In facto quod finitum et certum est, nullus est conjecturæ locus."

[8] The present rules regulating the construction of wills are highly technical and peculiar in the jurisprudence of the common law. Some phrases, regulating the quantity or the quality of interests intended to be conferred by a will, have obtained a conventional meaning which ought not to be departed from unless the intent of the testator so to do is obvious. All lawyers are aware that a science of interpretation of written instruments of doubtful import cannot be peculiar to any one nation, and that many of the common-law rules applied to interpretation are not approved of by those jurists who regard the true rules of interpretation of written language to be independent of time or place, and matter of fact for courts only.

[9] There can be no judicial construction of a testator's language in a doubtful case until the interpretation of the meaning of his words is ascertained as matter of fact. Construction begins when interpretation ends. There is a solid difference between rules governing the interpretation, and rules governing the construction, of dispositive provisions contained in written instruments. In all sovereign states of any antiquity the laws of property are a gradual growth or development, rather than the result of scientific genesis or scholastic exploitation. In respect of rights of property administered in this jurisdiction our own venerable law, and not some abstract system, even if that be more scientific or refined, is to govern dispositive limitations of property made by writings, whether wills or otherwise.

Rules of construction are closely connected with property rights, and in a domestic case they are determined by jus fori or lex loci. No sovereign state can abdicate its imperium to the extent of permitting abstractions of general operation to control its positive law regulating the devolution of property. Laws of construction are therefore local in origin and local in operation, notwithstanding some jurists to the contrary. In respect of rules of interpretation of language, doubtful or ambiguous, in so far as disclosing the intent of testators is concerned, it may be otherwise, as such rules are not local in origin or necessity. They belong to the general science of interpretation. No individual country can have its own particular science of arithmetic or numbers nor of interpretation. The distinction between construction and interpretation has been noticed at length because it is not adequately discussed in some of the late works treating of the construction and interpretation of written documents, and the distinction itself is particularly pertinent to the arguments set forth in this cause.

Under the law of this state, the testator's intent that a legacy shall vest at once, although payment is deferred, appears whenever such postponement of payment of the legacy is on account of the position of the property, as, for instance, where there is a prior gift to another for life or a lesser period. In this cause now here it is apparent that the usufruct of the residuary estate of testator was given by testator to trustees, in the first instance, and on trusts for the benefit of his widow during her life or widowhood. Meanwhile, payment of the legacy in question out of the residuary was simply deferred. This apparent fact of itself rebuts the inference that time was intended to be of the essence of the testator's gift to David. Tucker v. Ball, 1 Barb. 94; Barker, Ex'r, v. Woods, 1 Sandf. Ch. 129; Larocque v. Clark, 1 Redf. Sur. 469. While in several of these cases just mentioned the will took effect before the Revised Statutes, yet the principle of construction clearly announced is unchanged and predicated of facts not very dissimilar to those here present. They refer to an established common-law rule of construction. Packham v. Gregory, 4 Hare, 398; Bennett's Trust, 3 K. & J. 280; Strother v. Dutton, 1 DeG. & J. 675.

But as all local property cases in our courts must depend for solution, if possible, on the adjudications of our own state, the surrogate will now refer more directly to those modern adjudications of our own courts, which seem to offer the closest analogies, and in principle to control this cause now in this court. In Murtha v. Wilcox, 47 App. Div. 526, 62 N. Y. Supp. 481, the testator set up certain trusts in his will, and in the seventh article thereof provided that the said trusts were to continue until the testator's grandson, William L. Peirson, should reach the age of 21 years, or until the death of the testator's father, Harold Peirson, which event shall take place last. The eighth article of the will provides as follows:

"Upon the death of my father, Edward Peirson, or upon the arrival of my said grandson at the age of 21 years, whichever event shall be last as set forth in the preceding section of said will, I direct that my whole estate be equally and equitably divided among my wife, Martha W. Peirson; my said son, Edward E. Peirson, and my said grandson, William L. Peirson."

All of the said legatees survived the testator, but the testator's widow died before the termination of the trust. It was held that the share of the corpus of the residuary estate given to the testator's wife vested in her at the time of the testator's death, and was not contingent upon her surviving the termination of the trust created by the will. The court said, at page 529 of 47 App. Div. at page 483 of 62 N. Y. Supp.:

"While the gift is made solely by a direction to divide at a future date, the main purpose of the testator in establishing the trust seems to have been to provide an income for the support of his father as long as his father should live, and to postpone the distribution of the estate until his father should be dead and his grandson should have attained his majority. This postponement, chiefly for the benefit of the father of the testator, to enable the estate to meet the burden of the provision made in his behalf, did not operate to prevent the legacies over from vesting. Coit v. Rolston, 44 Hun, 548; Matter of Young, 78 Hun, 521 [29 N. Y. Supp. 403]; affirmed in 145 N. Y. 535 [40 N. E. 226]. Nor did the intervention of the trust have such effect. As in Goebel v. Wolf, 113 N. Y. 405, 415 [21 N. E. 388, 10 Am. St. Rep. 464]; the intention of the testator appears to have been to vest at the time of his death an equal share of his estate in his wife, his son Edward and his grandson. William L. Peirson, subject to the trust during the period specified in the will—the constitution of the trust being a convenient means of carrying out the testator's intention to assure to his father an income and support for life."

In Hersee v. Simpson, 154 N. Y. 496, 48 N. E. 890, the will of the testator provided as follows:

"Second. All the rest, residue and remainder of my estate, real and personal, of every name and nature (subject to the contingent payment of the above legacy), I bequeath and devise to my wife, Annette C. Hersee, to have, hold and enjoy the same, with the rents, issues and profits thereof, during the term of her natural life, and from and after her decease my will is that all of my said property be disposed of according to the statutes of the state of New York governing the descent of real property and the distribution of personal estates."

The Appellate Division (20 App. Div. 100, 46 N. Y. Supp. 755) held that the heirs of the decedent took a vested remainder in his real estate at the time of his death. This was affirmed by the Court of Appeals in this case (154 N. Y. 496, 48 N. E. 890).

In Matter of Young, 145 N. Y. 535, 40 N. E. 226, the second clause of the will of testator provided as follows:

"Second. I hereby ordain and require the sale of my farm as soon after my decease as it can be done without undue sacrifice, and out of the proceeds of such sale four thousand dollars are to be reserved for the use of my aforesaid wife in the purchase of another home; or, if she shall choose not to so purchase, or choose a place of less value, then the whole of the money or balance left after purchase shall be placed at interest and the profits arising therefrom shall be hers during life, and after her decease this amount of four thousand dollars, or the premises my said wife may purchase, with any balance of money left after purchase, shall, after her decease, be equally divided among my children, Amos J. Hurlbutt, Mary Tifft and Ellen Close."

The daughter Mary died in the lifetime of the widow, and it is claimed that the bequest to her lapsed because it was only to vest on the death of her mother. The court held that at the death of the testator the title vested in the three children, and the share of the one that died passed on her death to her representatives. The court said:

"Time may fairly be said to enter into the substance of a gift when the existence of such gift depends upon a contingency which may or may not happen, but where the only contingency is a death certain to occur and the legatees are known and fixed, it is more natural to regard a postponed division as relating to the period of actual enjoyment, where there are other words in the will evincing an intent to make the gift. It is quite evident in this case that the postponement of the distribution was to let in the interest of the widow (Loder v. Hatfield, 71 N. Y. 100) and enable her to receive the income of the fund during her life. We think, therefore, that the legacy to Mary vested on the death of the testator."

In Clark v. Cammann, 160 N. Y. 315, 54 N. E. 709, the testator left his residuary estate upon trust for the benefit of his wife, during life, and he then directed:

"From and immediately after the decease of my said wife I will and direct that as to $10,000 of the principal moneys to be invested as aforesaid, my said executors and trustees shall stand possessed of the same in trust to apply the interest thereof to the use of my niece, Mary Ann, wife of my executor, George D. H. Gillespie, for and during her natural life so as she may not anticipate the same, and from and immediately after her decease, upon trust, to pay over and divide the said principal sum of $10,000 unto and among all her children, share and share alike."

The referee in this matter held that the remainder did not vest in the sons of the children of the wife, and he was sustained by the Appellate Division and also by the Court of Appeals in this case. The court, however, in discussing this question said:

"The paramount question presented upon this review is as to whether the testator intended to vest in the sons of Mrs. Gillespie the $10,000 which was given to the trustees for her use during life. It is contended on behalf of some of the appellants that Matter of Brown, 154 N. Y. 313, 48 N. E. 537, is controlling on this question, and that under it the amount must be deemed to have vested in the sons at the death of the testator. There is, however, one important distinction between this will and the one which we have under consideration in the Brown Case. In that case the testator, Abraham Wing, died, leaving him surviving a widow and two daughters, each of which had children. After making certain specific bequests, he gave and devised all the rest and residue of his estate to his executors in trust, with directions to pay a certain annuity to his widow, and the rest of the income to his daughters; and, in case of the decease of either of his daughters during the lifetime of his widow, then, 'and in such case to pay the half share of said income to the children of such deceased daughter which would have belonged and been paid to the deceased daughter had she survived.' The will contained a similar provision in case both daughters should die during the lifetime of the widow, requiring the income to be paid, respectively, to the children of each. On the decease of the widow and daughter the estate went to the grandchildren they taking their mother's portion. It will be observed in that case there were no words of survivorship used with reference to the grandchildren, such as their descendants, or such as then survived, which were important considerations in determining the meaning of that will and inducing us to hold that, under the statute, the estate vested in the grandchildren, they all being alive at the death of the testator, and having an immediate right of possession upon the determination of the life estate. In the will we now have under consideration the provision materially differs. 'And from and immediately after her decease, upon trust, to pay over and divide the said principal sum of $10,000 unto and among all her children, share and share alike.' Had the testator stopped here, we should have regarded this will to be in substance the same as in the Brown Case, and should not have hesitated to hold that the legacies vested in the sons; but the testator proceeds 'and to their lawful representatives forever, as tenants in common, per capita, the issue of any such child who may then be dead to take his or her deceased parent's share.' Here we have an express provision of

138 N.Y.S.—11

the will which seems to negative the claim that the estate vested in the sons. The testator apparently understood that it might happen that the sons would not survive his widow or their mother, and therefore undertook to provide for such a contingency by giving the estate to the issue of the sons in case of their death. If the estate was intended to vest in the sons, then, upon the death of either of them, the estate would pass to their executors or administrators and might never reach the issue of such deceased child; but here we find, seemingly, an intention disclosed that the issue of the deceased child should take rather than the executors or administrators."

### In Canfield v. Fallon, 43 App. Div. 561, 57 N. Y. Supp. 149:

"The testator, after giving to his widow during her widowhood the use of his real and personal estate, provided: 'After the death of my wife, Catherine, I order that my property be equally divided between my children, Catherine Elizabeth and Julia Frances, that is to say, I give to my executors, in trust, for and during the natural life of my daughter Catherine Elizabeth, for her sole use and benefit, the income and profits of the one equal half of all my real and personal estate. After her death, I order the said half of my estate to be equally divided among her heirs as they shall attain the age of twenty-one years each, if any shall be minors at the time of her death. I also give to my executors in trust, for and during the natural life of my daughter Julia Frances, for her sole benefit and use, the income and profits of the other one equal half of all my real and personal estate, and after her death, I order the said half of my estate to be equally divided among her heirs as they shall attain the age of twenty-one years, if any shall be minors at the time of her death. And I further direct my executors to pay the said income and profits to my daughters Catherine Elizabeth and Julia Frances, in half yearly payments, the said Catherine Elizabeth and Julia Frances giving their receipts for the same. If either of my children, Catherine Elizabeth or Julia Frances, should die before their heirs shall have attained the age of twenty-one years, I order the said heirs to receive their proportion of the income to which their mother was entitled while living, in half yearly payments.' Held, that the shares given to the grandchildren of the testator vested at the latter's death."

### In Matter of Gardner, 140 N. Y. 122, 35 N. E. 439, the testatrix—

"first gave to her executors all her property not specifically disposed of, in trust, to be disposed of and expended as they might think best for the support and maintenance of a brother of the testatrix during life. All that remained thereof at his death, after certain legacies which were directed to be paid therefrom, the testatrix directed her executors to divide in four equal parts, each to be paid to a beneficiary named, 'each to share and share alike.' One of these beneficiaries died before the time of distribution arrived. Held, that the share did not lapse upon such death, but passed to the parties who were lawfully entitled to succeed to the estate of said beneficiary: that upon the death of the testatrix the residue vested in the persons named, subject to the life estate."

The surrogate has given to this cause very close attention, and has examined all the authorities cited, and many more not cited by counsel. If he has failed to notice in detail the numerous adjudications cited to him by counsel, it is not because they have been overlooked by him, but because they are so numerous as to preclude individual discussion. For the reasons stated, the surrogate is of the opinion that the legacy to David S. Egleston vested in him at the testator's death, and that it was not contingent upon his surviving the life beneficiary, as payment of such legacy was postponed to let in the interest of testator's widow, and for no other reason.

The decree in this cause will be settled in conformity with this opinion on the usual notice.