(49 Misc. Rep. 4.)

### GRAHAM v. GRAHAM et al.

(Supreme Court, Special Term, New York County. December, 1905.)

1. WILLS—CONSTRUCTION.

Testatrix devised land to her children, providing that the premises should be occupied by her daughters while unmarried and by her husband during his life. *Held*, that in determining the validity of the devise as to the daughters the provision as to the husband might be disregarded.

2. SAME—LIFE ESTATES—CROSS-REMAINDERS—PERPETUITIES.

Where testatrix devised land to her children and to the survivors of them per capita, subject to occupancy by three daughters of testatrix during their lives and while unmarried, the daughters became tenants in common with cross-remainders for life, and the life estates of any two daughters surviving the death of a sister would terminate upon the death or marriage of one of such survivors, since the allowance of any further life estates would conflict with the rule against perpetuities.

3. PERPETUITIES—POWER TO ALIENATE.

Where a will gave land to all of the children of testatrix, subject to life estates in testatrix's three daughters or the survivor or survivors of them while they should remain unmarried, the remaindermen and life tenants were at all times able to pass title to the land, so that the power of alienation was not illegally suspended.

Action by Charles B. Graham against Josephine L. J. Graham, individually and as surviving executrix of Joseph F. Graham, deceased, and others.

Salter & Steinkamp, for plaintiff.
Edward J. McGuire, for defendant De Moya.
John H. Unlandhern, for other defendants.

O'GORMAN, J. This action is brought for partition, and requires the construction of the second paragraph of the will of Susan Ann Graham, which reads as follows:

"Second. I give, devise and bequeath the real estate and premises owned by me and now known as number 747 Lexington avenue, in the city of New York, to my children, Charles B. Graham, Josephine L. J. Graham, Edward W. Graham, Emma L. Graham, Minnie I. Graham and Susan M. DeMoya, and to the survivors and survivor of them, per capita and not per stirpes. Subject to the use, occupancy and enjoyment thereof by my daughters Josephine L. J. Graham, Emma L. Graham and Minnie I. Graham during the term that they each or the survivors and survivor of them shall remain single and unmarried, and also subject to the use, occupancy and enjoyment thereof in connection with my said daughters Josephine L. J. Graham, Emma L. Graham and Minnie I. Graham, as aforesaid, by my beloved husband, Joseph F. Graham, during his natural life."

On the death of the testatrix on July 4, 1902, her daughters, Josephine, Emma, and Minnie, were living and unmarried. Her husband predeceased her. Her daughter Minnie died unmarried on February 21, 1903. Josephine and Emma are still unmarried. Susan M. De Moya, a married daughter, attacks the validity of the devise. As to the fee, more appropriate language could not well be employed to create a vested remainder, free from all ambiguity and uncertainty. The devise is clear, direct, and absolute, and vested in the six children immediately upon the death of the testatrix. The provision that the three unmarried daughters, the survivors, and the survivor of them should have the use and enjoyment of the property until they married conferred upon them an estate for life, subject to defeat in case of their marriage. Dana v. Murray, 122 N. Y. 614, 26 N. E. 21. The evident design of the testatrix was that, as the three unmarried daughters severally married or died, the surviving unmarried daughters or daughter should succeed to the interest of the daughter or daughters first dying or marrying; and, under the authorities, the three unmarried daughters became tenants in common with cross-remainders for life. Purdy v. Hayt, 92 N. Y. 455. The provision for the father's benefit need not be noticed, as the validity of the will must be determined by the facts existing at the death of the testatrix, and not those existing when the will was executed. Tallman v. Tallman, 3 Misc. Rep. 473, 23 N. Y. Supp. 734.

Section 33 of the real property law (Laws 1896, p. 565, c. 547) permits the creation of only two successive life estates in the same property, and the estate of the life tenants can be upheld only so far as it is in harmony with this statute. The life estate of the daughter Minnie, who first died, terminated on her death, and her enjoyment constituted one life estate in her undivided one-third share; and, if this were a simple tenancy in common, this undivided one-third share would thereupon cease and determine. There being a cross-remainder, however, a second life estate in that share then vested in her two surviving unmarried sisters, and will not be exhausted until one of them dies or marries. When either of these events occurs, the limit of the statute as to that share will then be reached, and the fee will be released from the life estate in the undivided one-third share of Minnie Graham. When either of these two last-named daughters marries or dies, one

life estate in the undivided one-third share of the person so dying or marrying will cease, and a second life estate in that share will thereupon pass to the third or surviving child. This second life estate in this second undivided one-third share will not end until the marriage or death of the third daughter. This event will also terminate the first life estate in the third undivided one-third share; and, as no provision has been made for a second life estate in this third undivided share, the entire life tenancy will then expire and the fee become freed from the burden of the particular or precedent estate. It follows, therefore, that at this time the two unmarried daughters hold and possess the entire life estate in the property, subject to defeasance as already noted. They each own the undivided one-third share which they acquired on the death of the testatrix, and this has been added to by the undivided one-third share of their deceased sister Minnie, which passed to them by cross-remainder on her death, and which is not yet extinguished. This result does not violate the statute forbidding more than two successive life estates in the same property. While there is no direction, express or implied, for a physical division of the life estate into separate portions, the beneficial interests of tenants in common are always distinct and separate from one another. In a life estate each undivided share of a tenant in common must be treated as a separate entity, and under the statute is entitled to its own separate tenant for two lives. Chapl. Susp. Alien, § 347. There is no suspension of the power of alienation. The statutory rule against perpetuities has no application where there are living persons who have unitedly the entire power of disposition free and untrameled. The test of alienability is whether or not there are persons in being who can give a perfect title. Matter of Ryder, 41 App. Div. 247, 58 N. Y. Supp. 635. There is no obstacle to the remaindermen and the life tenants giving good title now to the premises in question, if they should desire to do so.

There is no infirmity in the will, and its validity should be upheld.