HARDENBERGH et al. v. McCARTHY.

(Supreme Court, Appellate Division, First Department.  February 11, 1909.)

1. PERPETUITIES (§ 6*)—SUSPENSION OF POWER OF ALIENATION.

Testator gave property in trust to pay the net income to E. for life, the property on the death of E. to be divided into as many equal shares as there were children of E. who survived him or had died leaving issue. At such time each of the surviving adult children of E. and the issue of any child of E. who had predeceased him was to take one of such shares. It was then provided that the share of a child of E. not then of age should continue to be held in trust for him till he was of age, and should then be paid or transferred to him, the income to be paid him in the meantime, and that, if any child of E. surviving him died before coming of age leaving no issue, his share should be divided between and added to the shares of his surviving brothers and sisters and the issue of a deceased child of E.  At the testator's death E. and all of E.'s children, three of them infants, were living.  Held that, as each infant child of E. took a defeasible estate in his share on the death of E., the validity of the contingent devises in a case of child of E. surviving him dying while yet an infant leaving no issue, as against the claim of an illegal suspension of the power of alienation on the supposition of two of such infants so dying while the third was yet an infant, might well be upheld on the theory that testator intended that the share of an infant child so dying should at once be divided between and paid over to the surviving brothers and sisters whether or not they were of age, there being no words directly indicating an intention that the trustees should continue to hold any child's share longer than the attainment of his majority or his earlier death, and the estate in expectancy which each infant holds being a sufficient share in the estate to afford something to which an addition might be made.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–56; Dec. Dig. § 6.*]

2. WILLS (§ 81*)—PARTIAL INVALIDITY OF TRUST SCHEME.

The general scheme of testator in creating the trust being that E. should enjoy the income for life, and on the death of E. the principal should be divided between the children and descendants of E. in equal proportions per stirpes; and it being no part of such scheme to extend the trust beyond the death of E., so that as to the adult children of E. and as to children of a deceased child of E., whether adult or infant, testator provided that their share be paid over at once on E.'s death; and it being only as to children of E. who were infants at E.'s death that he provided for a continuance of title and possession in the trustees, and this, evidently, merely as a convenient way of bridging over the term minority, for each child on attaining majority was to take his share outright—any provision of the will illegally suspending the power of alienation as to part of the share of a child of E. dying after E., but while yet an infant and leaving no issue, because in devising such share over to the other children of E. it is provided that the part coming to the other children yet infants shall be held by the trustees till such other infants become of age, may be cut out, and the legal parts upheld.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 202; Dec. Dig. § 81.*]

3. SPECIFIC PERFORMANCE (§ 106*)—PARTIES.

The absence of persons having an interest in the construction of a will from a suit by trustees under a will to compel a purchaser of the trust property to complete his purchase does not make it improper to require specific performance, there being no disputed question of fact, and the question of law involved not being so doubtful as to render the title unmarketable.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 345, 348; Dec. Dig. § 106.*]

Submission of controversy on an agreed statement of facts between J. Warren Hardenbergh and others, executors of and trustees under the will of John M. Jones, deceased, as plaintiffs, and William O. McCarthy as defendant. Judgment for plaintiffs.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

· John B. Talmage, for plaintiffs.
Harold Swain, for defendant.

SCOTT, J. This is a submission of a controversy between the plaintiffs, as executors of the last will and testament of John M. Jones, deceased, as vendors, and the defendant as vendee, of certain real estate situated in the city of New York. On July 20, 1908, the parties entered into a written contract of sale of the premises in question. The plaintiffs propose to convey under a power of sale contained in the will of their testator. The defendant, admitting that the power is sufficient as to its terms, claims that it is inoperative because conferred upon the executors for the purpose of carrying out an illegal and void disposition of the testator's residuary estate to which alone the power of sale applies. By his will the testator, after making many specific bequests and devises, directed that his residuary estate should be divided into three parts, one of which is given to a sister Abby L. English and another to a sister Maggie E. Bliss. The question at issue arises respecting the disposition of the third part. This is given to the executors in trust to hold the same, and collect the income thereof, and, after paying taxes and assessments and proper charges, to pay over the net income to the testator's brother, Enos F. Jones, for his life. At the death of Enos F. Jones, the said share is to be divided into as many equal shares as will equal the number of children of Enos who may survive him and the number of his children who may then have died leaving lawful issue them surviving. At the death of Enos, each of his children who may survive him and shall then have attained the age of 21 years shall have and take one of said shares, and the lawful issue of any child of Enos who may have predeceased him shall have and take one of said shares.

The will then proceeds as follows:

"And the share of any child of my said brother Enos who shall not, at the time of his death have attained the age of twenty-one years shall continue to be held in trust as aforesaid by my executors or the survivors or survivor of them or those or the one who may qualify and act, for such child until he or she shall attain that age, and be then paid, transferred or conveyed to him or her.

"And I give, bequeath and devise over—accordingly—and until the attaining of the age of twenty-one years by any taker entitled to receive under the foregoing provisions applying to persons who are governed by this limitation as to age the net income of his or her share so to be held in trust is to be paid semi-annually to the duly appointed guardian of the minor for whom the share is held.

"And if any child of my said brother Enos, who shall survive him, shall die before attaining the age of twenty-one years leaving no lawful issue, the share of the child so dying is to be equally divided between and added to the shares of his or her surviving brothers and sisters, and the shares of the lawful issue of any deceased child of my said brother.

"But if any child of my said brother Enos shall die before attaining the age of twenty-one years and shall leave lawful issue him or her surviving, the share of such child so dying is to be paid, transferred, assigned and conveyed unto such issue, if one, wholly, and if more than one, share and share alike."

At the time of the testator's death, his brother Enos, who was then living, but has since died, had seven children, three of whom were infants. All of the seven are still living, and are all of the children of Enos. The defendant's contention is that the remainder over, in the event that any child of Enos should die during infancy leaving no issue, creates an illegal suspension of the power of alienation. It is claimed that, if one of the children of Enos should die during infancy leaving no issue, a part of the share held for him by the executors would be added to the shares held by the executors for the other two infants, and, if one of these should die in infancy, a part of his share, including the contribution thereto from the share of the infant first dying, would be added to the share then held by the executors for the surviving infant. Hence it is argued that as to some part of the residuary estate the power of alienation might be suspended for three lives and one minority, to wit: The life of Enos; that of the infant first dying; that of the infant secondly dying, and the remainder of the minority of the third infant. This objection is based in large part upon the case of Simpson v. Simpson (Sup.) 113 N. Y. Supp. 370 (lately decided by this court). The analogy between the two cases is, however, far from perfect. In the Simpson Case the will provided that certain shares of the estate should be held by the executor for the benefit of a brother and sister during their respective lives; that, upon the death of either, his or her part should be added to the share of the survivor, and, upon the death of the last survivor, the whole principal should go to a nephew and niece. No estate whatever was given to either brother or sister in possession or remainder; the only interest of either being a life interest in the income. It was considered that the share or interest of a surviving brother or sister to which was to be added the share of a sister or brother dying must of necessity be deemed to be the share held in trust by the executor for the benefit of the survivor, because there was no other share of such survivor to which it might be added. Nor could the cross-remainders which resulted in an illegal suspension be disregarded without destroying the whole scheme of the will which was that the income of the shares set apart for the brother and sister should be enjoyed by them so long as either of them lived, and that the whole principal should then go to the nephew and niece. To have cut out the cross-remainders would either have deprived the surviving brother and sister of a part of the income intended to be enjoyed by him or her, or would have deprived the nephew and niece of a part of the principal intended to be ultimately paid to them. In either case the testator's intention would be destroyed. In the present case each infant child of Enos surviving him takes at once an estate in expectancy in the share held for him or her by the executors during minority, subject to be divested only if he or she shall die during infancy without lawful issue. Such infant, therefore, takes at once upon the death of Enos a defeasible estate in the share set apart for him. The provision of the will is, in case of the

death of an infant child of Enos without issue, that the share of such child "shall be divided between and added to the share of his or her surviving brothers and sisters."

The validity of the contingent devises in case of the death of an infant child might well be upheld upon the theory that the testator intended that the share of such child should be divided between and paid over to the surviving brothers and sisters, for there are no words in the will directly indicating an intention that the executors should continue to hold any child's share longer than the date of the attainment of his majority, or his earlier death, and the estate in expectancy which each infant holds would be a sufficient "share" in the estate to afford something to which an addition might be made. If, however, we go to the full length of the defendant's contention, and hold that, as to the portion of the share set apart and held by the executors for an infant child of Enos who dies in infancy without issue, the will provides that it shall continue to be held by the executors during the infancy or life of a second child and the infancy of a third, and thereby as to such portion creates an illegal suspension of the power of alienation, still the illegal disposition may be cut out of the will without disturbing the harmony of its other provisions, or affecting the obvious purpose which the testator had in mind. His scheme for the disposition of the one-third of the residuary estate is perfectly clear. He desired that his brother Enos should enjoy the income during his life, but not the principal. At the death of Enos, he desired that the principal should be divided between the children and descendants of Enos in equal proportion per stirpes. It was no part of his general scheme to extend the trust beyond the death of Enos. So as to Enos' adult children and the children of a deceased child, whether adult or infant, he provided that their share should be paid over at once. It was only as to infant children of Enos that he provided for a continuance of title and possession in the trustees, and this evidently was intended merely as a convenient way of bridging over the term of minority, for each child upon arriving at age was to take his share outright, and, if any child should die during infancy leaving issue, such issue, though necessarily under age, were to take. Throughout all the provisions as to this one-third of the residuary estate there appears a careful avoidance of the possibility of tying up the property beyond the permissible period, even to the extent, in two separate contingencies, of providing that shares might go directly to infants. It is most improbable that the testator intended to make an illegal disposition in case of a child of Enos dying in infancy without issue, and if, by the inadvertent use of language, he has so provided, there is ample authority for separating the illegal provisions from the legal and upholding so much of the will as is free from objection. Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917, and cases therein cited. We do not consider that the absence of those who may have an interest in the construction of the will renders it improper to require the purchaser to complete his purchase. There is no disputed question of fact in the case, and the question of law involved does not seem to us to be so doubtful as to render the title unmarketable.

There must be judgment for the plaintiffs as prayed for in the submission, with costs. All concur.