In the Matter of the Petition of HENRY G. TREVOR to Obtain a Determination as to the Validity, Construction or Effect of the Disposition of Property Contained in the Last Will and Testament of JOHN B. TREVOR, Deceased.

Surrogate's Court, Westchester County, December, 1922.

Wills — construction — trusts — remainders — exceptions to " divide and pay over " rule — when remainders vest with postponement of enjoyment and subject to be defeated by death in favor of others.

The general rule that where a will contains no words of present gift save in a direction to trustees to pay or divide at a future time, the vesting in the beneficiary will not take place until that time arrives, has many qualifications and readily yields to exceptions, the two principal ones of which are:

1. Where the postponement of the transfer or payment to the beneficiary is for the purpose of letting in an intermediate estate, and
2. Where aside from the direction to the trustees to pay over there are words in the will which import a gift vested in interest prior to the time of payment.

Testator by the 4th paragraph of his will gave the rest, residue and remainder of his estate, real and personal, unto his executors as trustees to " set apart and invest out of my personal estate one equal third part thereof, and to hold the same for the benefit of my wife, if she shall be living at my death, and to pay over to her the interest and income arising therefrom as it shall accrue and be received by them during her natural life. On the death of my wife, the said principal sum * * * shall be disposed of by my executors for the benefit of her children [naming them], by adding the same in equal parts to the several shares representing her said children respectively, in my residuary estate as hereinafter provided."

By the 7th paragraph of his will testator provided for the disposition of the remaining two-thirds of his residuary estate by directing his executors or trustees " to divide the remainder of my entire estate in four equal parts or shares to represent respectively my four children now living [naming them], one equal share to represent each child, and to hold and invest each share and apply the income therefrom * * * or so much thereof as shall be necessary to the support, maintenance and education of the child whom it represents during the minority of any child * * *. After such child shall have attained the age of twenty-one years the whole income of the share representing such child shall be applied to the use of such child." Testator further provided that the principal be paid over to each child in fifth parts when each child arrived at a certain age, and in the event of any child dying after him before receiving its share of the estate in full leaving lawful issue such issue to stand in the place of the deceased parent and the share of the testator's estate representing the child dying to belong to and vest in the issue of such child so dying and to be divided equally among them *per stirpes*, share and share alike, " but in respect to any issue of a child so dying who should be an infant under the age of twenty-one years I direct my executors to set apart an equal part of the parent's share to which such infant child will be entitled at the death of the parent and hold the same during the minority of such infant child and to apply the income only of such share to the benefit of such infant child during minority, * * * it being my intention that the absolute ownership of each share of my estate representing any child or grandchild of mine shall not be suspended except as hereinbefore specified during the single life of the child whom it represents and during the minority of any grandchild." Testator further provided that if any child should die after him without leaving lawful issue and before such child became entitled to receive its share in full, the share representing such child was to be added to the shares, in equal sums, representing his other surviving child or children.

The testator was survived by his widow, a son by a former wife and two daughters and a son by his second wife. One of the daughters died in 1900, survived by two daughters, and the widow of the testator died in 1922. The trusts in two-thirds of the residuary estate were settled on the basis of the will giving vested remainders.

Petitioner, a son by testator's first wife, now contends that the rule of law is violated by his father's will in that the estate carried over into three or four lives not in being at the creation of the estate; that the widow's trust contained no absolute vested gift except the net income to the widow and that all other gifts thereunder are contingent. The question, therefore, is whether the interest of the children of the widow in her trust of one-third of the personal estate was contingent or vested within two lives in being. *Held,* that the provisions for the widow and children are independent and separable and the will should be construed as vesting a remainder in equal shares in each child of the second

wife in the trust created for her on the death of the testator, the enjoyment of which was, however, postponed until the widow's death subject to be defeated by the death of a child before receiving his or her full share, in favor of their issue, and subject further to be defeated by death before receiving his or her full share, in favor of surviving brothers and sisters on the death of the child without issue.

PROCEEDING to construe a will.

C. C. Daniels (Henry A. Forster and Henry J. O'Neill, of counsel), for petitioner.

Cadwalader, Wickersham & Taft (George W. Wickersham, of counsel), for Emily H. Trevor and others.

Butler, Wyckoff & Reid (J. Edwards Wyckoff and John F. Devlin, of counsel), for executors and trustees.

Oscar Leroy Warren, special guardian for John B. Trevor, 2d, and Bronson Trevor, children of John B. Trevor, Jr.

J. Alvord Peck, special guardian for Haven Trevor and others, grandchildren of the petitioner.

SLATER, S. The reason for this opinion is found in the title to the proceeding. John B. Trevor's will was admitted to probate January 9, 1891. Proceedings affecting it have been before this court in two other instances. Matter of Stewart, 88 App. Div. 23; Matter of Trevor, 119 Misc. Rep. 277. He was survived by his widow, Emily N. Trevor, and his four children, Henry G. Trevor, aged twenty-five years, a son by a former wife, and Mary T. Trevor, aged eighteen years, later Mary T. Winthrop, Emily H. Trevor, aged sixteen years, and John B. Trevor, Jr., aged ten years, children by his second wife. Mary T. Winthrop died December 1, 1900, leaving two children, Emily and Kate Winthrop. Testator's widow died July 22, 1922.

By the 2d paragraph of his will the testator created a trust in his homestead property at Yonkers for the life of his wife for the purpose of a family residence for his wife and children, to be continued after her death in the discretion of the trustees, and provided that the power of alienation should not be suspended longer than the life of his widow and the youngest of his children who should be living at his death. At the termination of the trust the property is to be sold and the proceeds of sale added to the residuary estate which is elsewhere given to his four children.

By the 4th paragraph of the will the testator gives the rest, residue and remainder of his estate, real and personal, unto his executors as trustees to " set apart and invest out of my personal estate one equal third part thereof, and to hold the same for the

benefit of my wife, if she shall be living at my death, and to pay over to her the interest and income arising therefrom as it shall accrue and be received by them during her natural life. *On the death of my wife*, the said principal sum (with any addition from time to time of proceeds of real estate to the extent of one-third part thereof as hereinafter directed) shall be disposed of by my executors for the benefit of her children, Mary T. Trevor, Emily H. Trevor and John B. Trevor, Jr., by adding the same in equal parts to the several shares representing her said children respectively, in my residuary estate as hereinafter provided. In the event of the death of my wife before me, I direct that the said one equal third part of my personal estate shall be added in equal parts to the several shares of the three children of our marriage above named, in my residuary estate to be held and disposed of as hereinafter provided as to their said several shares."

The gift of the residuary estate is found in the 7th paragraph of said will. It follows: " In regard to the disposition and distribution of the remainder of my residuary estate after making the provision for the benefit of my wife, out of my personal estate, and the other provisions hereinbefore directed to be made out of the remaining two-thirds of my personal estate, I make the following directions. I direct my executors to keep separate accounts in reference to all the real estate which may be held by me at my death, or in which I may be interested as a member of the firm of Trevor & Colgate and of James B. Colgate & Company or in any other manner, treating all such interests as real estate and charging all the taxes, assessments and expenses connected therewith against the several parcels thereof. As fast as any of my said real estate or interests therein or any parcel thereof shall be sold, either by my executors under the power of sale in this will contained, or by the surviving partners of any firm in which I have been interested, the net proceeds of such sales shall be *personal property* in the hands of my executors and one-third part thereof shall thereupon be added to and included in the one-third part of my personal estate hereinbefore directed to be set apart and invested for the benefit of my wife during her life and shall on her death be disposed of by my executors for the benefit of her children by adding the same in equal parts to the shares of my personal estate representing them respectively; and the remaining two-thirds thereof shall be added, in equal parts, to the shares of my residuary estate hereinafter directed to be constituted and set apart to represent my *four* children. Until sold, the income of all said real estate shall, to the extent of one-third part of such net income, be paid to my said wife during her life, and after her death the

same shall be applied for or paid to her children by my executors or trustees in the manner hereinafter provided in respect to the income of their several shares in my residuary estate, and the remaining two-thirds of such income shall be applied and paid in the manner hereinafter provided in respect to the income of the shares of my four children in my residuary estate.   I direct my executors or trustees *immediately after my death* and after making the provisions hereinbefore directed to be made, *to divide the remainder of my entire estate* in four equal parts or shares to represent respectively my four children now living, to wit, Henry G. Trevor, Mary T. Trevor, Emily H. Trevor and John B. Trevor, Jr., *one equal share* to represent each child, and *to hold and invest each share and apply the income* therefrom as it shall be received by my executors, or so much thereof as shall be necessary to the support, maintenance and education of the child whom it represents, during the minority of any child and until such child shall attain the age of twenty-one years, when all accumulations of interest shall cease, and the accumulated interest shall be paid to such child. After such child shall have attained the age of twenty-one years the *whole income of the share representing such child* shall be applied to the use of such child by my executors or trustees and upon such child attaining the *age of twenty-three years* I direct them to pay over to such child *one equal fifth part of the principal sum* representing such child and thereafter the whole income of the remaining four-fifths of such principal sum shall be applied to the use of such child until he or she shall attain the age of twenty-six years, when one other equal fifth part of such *principal* sum shall be paid over to such child, and the income of the residue of the said sum shall be applied to the use of such child until he or she shall attain the age of thirty-two years when one other equal fifth part of the whole residue of the *principal sum* of the share representing such child shall be paid over to such child and the income of the residue shall be applied to the use of such child until he or she shall attain the age of forty years when the remaining two-fifths of said *principal sum* representing such child shall be paid over to such child, *unless in the discretion and judgment of my said executors or trustees it shall for any reason seem best to them to withhold and defer the payment of one-half (being one-fifth of the said principal sum) for a further period of time during the life of such child and in such case such remaining one-fifth shall not be so paid over but shall be held by my said executors and the income only paid to the said child during his or her life and on the death of such child the said remaining one-fifth of such principal sum, if not paid over to such child during his or her life, shall fall into and become a part of my residuary estate.*

In the event of the death of any child of mine before me, or after me, before receiving his or her share of my estate *in full leaving lawful issue* such issue shall stand in the place of the deceased parent and the share of my estate representing the child who shall have so died shall *belong to and vest in the issue of such child so dying* and be divided equally among them *per stirpes*, share and share alike, *but in respect to any issue of a child so dying who shall be an infant under the age of twenty-one years, I direct my executors to set apart the equal part of the parent's share to which such infant child will be entitled at the death of the parent and hold the same during the minority of such infant child and to apply the income only* of such share to the benefit of such infant child during minority as far as may be necessary, and on such child attaining the age of twenty-one years to pay over the principal of the share of such child to such child with any accumulations of interest thereon.    And I appoint my executors and trustees hereinafter named to be the guardians and trustees of such infant child, if any, during his or her minority; *it being my intention that the absolute ownership of each share of my estate representing any child or grandchild of mine shall not be suspended except as hereinbefore specified during the single life of the child whom it represents and during the minority of any grandchild.*    In the event of the death of any child of mine before me or after me *without leaving lawful* issue surviving him or her, and before he or she shall be entitled to receive his or her share of my estate in full as hereinbefore provided, I direct my executors or trustees to *add the share* representing such child, or so much thereof as may remain unpaid, in equal sums to the shares of my estate, representing my other surviving child or children.    I further authorize my executors at any time before the first payment of principal by them to any child to *advance out of the share* representing any such child to him or her a *sum or sums not exceeding fifty thousand dollars in the aggregate,* when ever it shall in the judgment of my executors seem judicious and proper that such advance be made, and all such advances shall be charged against and deducted from the *share of the child to whom they are made."*

It should be noted that the gift of one-third of the personal estate for the widow's three children is created in the 7th paragraph by the use of the same words and terms, as did create the gift of the two-thirds of the residuary estate to the decedent's four children.   The 7th paragraph governs both gifts.

Three of the four children of the testator long since attained the age of forty years, one died at the age of twenty-eight years leaving issue surviving, and their trusts in two-thirds of the residuary

estate have terminated. The discretionary provision for prolongation of their trust governing one-fifth of the separate shares was not exercised. The executors have accounted in this court for the whole estate by decree entered February 19, 1892, which directed the setting up of the trusts, for the widow in one-third of the personal estate, and for each child an equal share in the two-thirds of the residuary estate. There have been separate accountings for the various trust funds. Petitioner's share in the two-thirds portion of the residuary estate was paid over to him April 25, 1905, on settlement by release and out of court. Said release is in evidence. The trust for Mrs. Winthrop's share in the two-thirds of the residuary estate has been accounted for in this court, and on the last accounting, March 10, 1902, she having died, it was decreed that her children, Emily and Kate, were entitled to their mother's share. Decrees were entered in accountings for Emily H. Trevor's and John B. Trevor, Jr.'s share in the two-thirds of the residuary estate, and the final settlement with them was out of court by release, dated July 11, 1914, and December, 1918, respectively. Thus it will be seen that the trusts in two-thirds of the residuary estate were settled on the basis of the will giving vested remainders and each has received one-sixth of the residuary estate in each trust fund held for them respectively. If the gift for the widow's children is invalid, because of contingent limitations, consequently the gift of the two-thirds portion is likewise defective and the whole scheme of the several accountings has been on a wrong basis. No question has heretofore been raised as to the validity of any trust created by the will, except the one relating to the homestead. *Matter of Stewart*, 88 App. Div. 23. But the petitioner is well within his rights in bringing this proceeding, although he has heretofore received his share of the residuary estate. The prior decrees are conclusive as to what was decided and nothing more. The application of the doctrine of election and estoppel will not be considered by the courts as effectual, even though the petitioner has waited for over thirty years to ascertain if perchance he might participate in his half brother's and half sisters' share in the event of their dying without issue. Failing in this, he has the right to attack the provisions of the will, because the question now before the court has never been litigated or decided. *Matter of Hood*, 90 N. Y. 512; *Matter of Tilden*, 98 id. 434; *Bowditch* v. *Ayrault*, 138 id. 222, 231; *Rudd* v. *Cornell*, 171 id. 114, 123; *Matter of Mount*, 185 id. 162, 166; *Griffen* v. *Keese*, 187 id. 454; *Morton Trust Co.* v. *Sands*, 195 id. 28, 37; *Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 id. 525, 539.

The absolute ownership of personal property shall not be sus-

pended by any limitation or condition for more than two lives in being at the death of the testator. Pers. Prop. Law, § 11. As to real estate the absolute power of alienation shall not be suspended beyond two lives in being at the creation of the estate and certain future contingencies. Real Prop. Law, § 42. The petitioner contends that this rule of law is violated in the will of the testator by the fact that the estate carried over into three or four lives not in being at the creation of the estate; that the widow's trust contained no absolute vested gift, except the net income to the widow; that all other gifts thereunder are contingent. Some appearing in support of the will maintain that the will creates a vested remainder in the widow's children as to the part held in trust for her, while others say, if the children's lives are to be counted as the second life for each separate share there are no contingent remainders, and even should there be, the theory of deletion will save the trusts and the scheme of the will. The question then is whether the interest of the children of the widow in her trust of one-third of the personal estate was contingent, or vested within two lives in being.

" A future estate is either vested or contingent. It is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates. It is contingent while the person to whom or the event on which it is limited to take effect remains uncertain." Real Prop. Law, § 40. It is not the uncertainty of enjoyment in future, but the uncertainty to the right of that enjoyment which marks the difference between a vested and a contingent remainder. An estate is vested when there is an immediate right of present enjoyment, or a *present right of future enjoyment*. But, though it may be uncertain whether a remainder will ever take effect in *possession*, it will, nevertheless, be a vested remainder, if the *interest* is fixed. Thus, we have estates vested in possession, and estates vested in *interest*. Estates may vest, subject to being divested. *Moore* v. *Littel*, 41 N. Y. 66; *Flanagan* v. *Staples*, 28 App. Div. 319.

The object of the court is to ascertain, not the intention simply, but the expressed intention of the testator, *i. e.*, the intention which the will itself, either expressly or by implication, declares. *Matter of Silsby*, 229 N. Y. 396, 402.

Assuming there are in the will no direct words of gift to the children, the general rule or canon of construction is that, while there is no present gift, but a direction to trustees to pay or divide at a future time, the vesting in the beneficiary will not take place until that time arrives. But this rule readily yields to exceptions

and the rule has many qualifications. *Matter of Baer*, 147 N. Y. 348; *Dickerson* v. *Sheehy*, 156 App. Div. 101; affd., 209 N. Y. 592; *Matter of Embree*, 9 App. Div. 602, 609; affd., 154 N. Y. 778; *Matter of Lamb*, 182 App. Div. 180; affd., 224 N. Y. 577; *Fulton Trust Co.* v. *Phillips*, 218 id. 573, 582, 583; *United States Trust Co.* v. *Taylor*, 193 App. Div. 153, 157; affd., 232 N. Y. 609. In *Matter of Tienken*, 131 N. Y. 391, 409, Judge Finch said: "We have heretofore said that the rule of construction founded upon a gift flowing only from a direction to divide has many exceptions, and is to be used as an aid to ascertain the intention and not as a force to pervert it." The two principal exceptions are:

(1) Where the postponement of the transfer or payment to the beneficiary is for the purpose of letting in an intermediate estate (for instance, the widow's life estate held in trust). *Loder* v. *Hatfield*, 71 N. Y. 92; *Matter of Lamb, supra.*

(2) Where there are words in the will, aside from the direction to the trustee to pay over, which *import a gift vested in interest* prior to the time of payment. *Manice* v. *Manice*, 43 N. Y. 303; *Matter of Crane*, 164 id. 71.

In the instant case we have present the first principal exception, the intermediate estate, the gift of the widow's trust for her life. Then let us look within the four corners of the will for illustrations falling within the second exception, and we find we have present: (a) The gift of the widow's trust by the terms of the will is to be severed *instanter* from the general estate. This has been done. The trust was set up according to a decree of the Surrogate's Court dated February 19, 1892. This illustration is found in *Warner* v. *Durant*, 76 N. Y. 133; *Fulton Trust Co.* v. *Phillips, supra*, 580. (b) The expressed intention that each beneficiary was to have advanced out of the corpus of his or her share of the estate moneys in the aggregate up to $50,000 at any time prior to arriving at the age of twenty-three years. *Everitt* v. *Everitt*, 29 N. Y. 39, 75; Thomas Law of Estates Created by Will, 260; *Torrey* v. *Shaw*, 3 Edw. Ch. 356; *Goebel* v. *Wolf*, 113 N. Y. 405, 414. (c) The expressed intention that the children should receive the income of their respective shares for their support, maintenance and education during their minority, and when on arriving at majority all accumulated *income* should be paid to them. *Smith* v. *Edwards*, 88 N. Y. 92, 102, 106; *Vanderpoel* v. *Loew*, 112 id. 167, 181; *Goebel* v. *Wolf, supra*, 415; *Steinway* v. *Steinway*, 163 N. Y. 183; 1 Jarman Wills [6th Am. ed.], *802; *Fulton Trust Co.* v. *Phillips, supra; Cammann* v. *Bailey*, 210 N. Y. 19, 31, opinion by Cullen, Ch. J.; *Matter of Sackett*, 201 App. Div. 51, 61. (d) The expressed intention that the trustees were "to pay over" to the

children the principal of their several shares on reaching certain specified ages. *Fulton Trust Co.* v. *Phillips, supra; Matter of Peters,* 96 Misc. Rep. 535; *Matter of Bostwick,* 203 App. Div. 158. (e) The expressed intention of the testator in his gift of the residence property to the widow in the 2d paragraph of the will, by his use of these words: " And no part of any such sums shall be charged against the income of my wife, or of any child, or *against the principal of the share of any child."* And in his further expressed intention that the net income of the real estate until sold shall be paid to the widow as to one-third thereof and after her death the same shall be *paid* to her children as hereinafter provided. Thomas Estates Created by Will, 259, 379, and cases cited; *Matter of Tienken, supra,* 408. (f) That the gift was not to a class (as was the fact in *Matter of Leonard,* 218 N. Y. 513, 521), but to specifically named living children of the testator. The persons who take are fixed. The testator mentioned the children *nominatim. Matter of Embree, supra; Clark* v. *Clark,* 23 Misc. Rep. 272; *Stevenson* v. *Lesley,* 70 N. Y. 512; *Matter of Hicks,* 119 Misc. Rep. 6; *Roosa* v. *Harrington,* 31 id. 529, 535; *Matter of Lotz,* 92 id. 683, 688. (g) The expressed intention that so much of the *share* of any deceased child dying " before me or *after me* " not paid in full is *to belong to and vest in the children of such deceased child. Williams* v. *Boul,* 101 App. Div. 593; affd., 184 N. Y. 605; *Brussel* v. *Deitsch,* 190 App. Div. 368. (h) The expressed intention in the 5th paragraph that the gift over to the three children is to be, " *On the death of my wife."* These words do not imply as much futurity (*Matter of Bostwick, supra*) as the words " *after the decease* " and the latter have been expressly held not to prevent a vesting. *Matter of Ossman* v. *Von Roemer,* 221 N. Y. 381.

These many tokens of intention here enumerated are interestingly significant and have in combination a cumulative value. It must be conceded that intention is paramount and is the final test. The " divide and pay over " rule of construction is merely a canon of construction, must be subsidiary to the intention of the testator as expressed in the will. *Whitwell* v. *Whitwell,* 146 App. Div. 270; *United States Trust Co.* v. *Taylor,* 193 id. 153, 157; affd., 232 N. Y. 609; *Fulton Trust Co.* v. *Phillips, supra,* 582; *Matter of Gee,* 201 App. Div. 540. A remainder is never contingent if it can be construed as vested. *Connelly* v. *O'Brien,* 166 N. Y. 406, 408. The question of vesting is one of intention and the whole will is to be considered in determining the intention of the testator. In *Wright* v. *Wright,* 225 N. Y. 329, 336, there were no words or provisions which *directly or indirectly* would import a present gift, or which indicated such an intent. Clearly that is not our case.

Surrogate's Court, Westchester County, December, 1922.    [Vol. 120

Nor should a remainder be considered contingent in any case where it may vest consistently with the intention of the testator. *McGillis* v. *McGillis,* 154 N. Y. 532.   Where a will is susceptible of construction by which there may be a testamentary disposition of the entire estate, that construction will be given.   *Matter of Goldmark,* 186 App. Div. 447; *Matter of Ossman* v. *Von Roemer, supra.*   And where a will is susceptible of more than one construction, the one which will render it valid will be preferred because it is presumed to accord with the actual intention.   *Seitz* v. *Faversham,* 205 N. Y. 197; *Matter of MacDowell,* 217 id. 454. Even where the terms of a bequest import a gift, and there is a direction to pay at a subsequent time, the legacy vests.   *Manice* v. *Manice,* 43 N. Y. 303, 369.

The court believes there is ample language in the will that is susceptible to the construction that will avoid the " divide and pay over " rule, and that the will as an entirety better sustains the exceptions than the general rule.   Consequently, the instant case is taken out of the rule as to the direction to pay or divide at a future time by the words and provisions importing a present and vested gift.   It does not fall within the class of cases cited by the petitioner, such as *Hobson* v. *Hale,* 95 N. Y. 588, 610; *Dickerson* v. *Sheehy, supra; Brooklyn Trust Co.* v. *Phillips,* 134 App. Div. 697; affd., 201 N. Y. 561; *Lewisohn* v. *Henry,* 179 id. 352; *Matter of Wiley,* 111 App. Div. 590; revd. on dissent, 188 N. Y. 579; *Herzog* v. *Title Guarantee & Trust Co.,* 177 id. 86, 89; *Schlereth* v. *Schlereth,* 173 id. 444, 450; *Central Trust Co.* v. *Egleston,* 185 id. 23, 31; *Benedict* v. *Salmon,* 177 App. Div. 385; *National Park Bank* v. *Billings,* 144 id. 536.

Then, too, the law favors the vesting of estates, both real and personal, and the presumption is always against intestacy.   *Matter of Brown,* 154 N. Y. 313; *Hersee* v. *Simpson,* Id. 496, 500; *Davis* v. *MacMahon,* 161 App. Div. 458, 464; affd., 214 N. Y. 614; *Stack* v. *Leberman,* 169 App. Div. 92, 94.

Applying the expressed intention of the testator as found in the words and provisions of his testament, and these canons of construction as aids, effect must be given to it, rather than applying the established rule which will defeat such intention.   The intention of the testator is reasonably clear.   All of the cases recite the rule that the intention of the testator prevails.   *Robinson* v. *Martin,* 200 N. Y. 159, 164; *Mullarky* v. *Sullivan,* 136 id. 227, 230, 232; *Matter of Buechner,* 226 id. 440, 444.   A gift over on death or failure of the beneficiary in remainder does not render the remainder any the less vested.   *Van Brunt* v. *Van Brunt,* 111 N. Y. 178.   Nor will the interposition of a trust estate prevent the vesting of a

remainder interest. *Embury* v. *Sheldon*, 68 N. Y. 227; *Doscher* v. *Wyckoff*, 132 App. Div. 139; *Matter of Van Kleeck*, 95 Misc. Rep. 40. Futurity is not annexed to the substance of the gift. Where after an absolute gift there is a subsequent limitation over in the event of the devisee dying without issue, the gifts are not repugnant to each other. *Roome* v. *Phillips*, 24 N. Y. 463; *Matter of Crossman*, 113 id. 503; Thomas Estates Created by Will, 274.

The 5th paragraph of the will reads: " On the death of my wife the principal sum   *   *   *   shall be disposed of by my executors for the benefit of her children " (naming them) and the 7th paragraph reads: " I direct them (the executors) to pay over to such child one equal fifth part of the principal sum representing such child   *   *   *." These words are to be regarded as indicative of the time of enjoyment of the estate and not of the time of vesting. *Connelly* v. *O'Brien*, 166 N. Y. 406; *Livingston* v. *Greene*, 52 id. 118; *Hersee* v. *Simpson*, *supra*, 496; *Goebel* v. *Wolf*, *supra*; *Campbell* v. *Stokes*, 142 N. Y. 23, 28; *Warner* v. *Durant*, 76 id. 133, 136; *Bowditch* v. *Ayrault*, 138 id. 222, 230; *Matter of Lowerre*, 104 Misc. Rep. 570, 578; *Gates* v. *Fisher*, 107 id. 53, 56; *Matter of Bostwick*, *supra*. It was within the power of the testator to postpone the period at which the estate should vest in possession. *Morss* v. *Allin*, 181 App. Div. 79, 81. In the event, however, that the vesting was postponed to the attainment of the age of twenty-three, when the first payment of principal is to be made, it can be said that the three children of the widow lived the stipulated time and longer, within the lifetime of the mother. *Matter of Bostwick*, *supra*. At the termination of the trust, even if the remainder had been contingent, the contingency ceased. *Fulton Trust Co.* v. *Phillips*, *supra*; *Matter of Ossman* v. *Von Roemer*, *supra*, 387. The right was perfect, subject only to be defeated by their dying before receiving their full share.

Even it may be held with authority that the words importing a gift found in the will are words of express gift. *Whitwell* v. *Whitwell*, 146 App. Div. 270, 272; *Matter of United States Trust Co.*, 78 Misc. Rep. 227; *Matter of Van Kleeck*, *supra*, 44; *Matter of Peters*, 96 Misc. Rep. 535; *Matter of McQueen*, 99 id. 185, 192.

It is my opinion that this will should be construed as vesting a remainder in equal shares in each child of Emily N. Trevor in the widow's trust on the death of the testator, the enjoyment of which was, however, postponed until the widow's death, subject to be defeated by death before receiving his or her full share, in favor of their issue, and subject further to be defeated by death before receiving his or her full share in favor of surviving brothers and

Surrogate's Court, Westchester County, December, 1922. [Vol. 120

sisters, on the death of the child without issue, and subject to the right in the trustees to withhold one-fifth of each share for the life of such child. These views will carry out the intent of the testator; no rule of law is violated.

While the court sustains the will upon the theory of vested remainders, let us examine further to ascertain, in the event the estate did not vest in the children, if the contention of the petitioner is sound in law, which is, that the life of the widow in the whole gift, and the life of the child in his or her share of said third part are the two lives in being in each share, *with other possible successive life estates to follow.* The validity of this will must be determined, not in the light of what has actually transpired, but from the point of view as to what may transpire at the time of the death of the testator. *Matter of Wilcox,* 194 N. Y. 288, 294; *Mount* v. *Mount,* 108 Misc. Rep. 156, 161.

A portion of the paragraph of the will attacked by the petitioner says: " In the event of the death of any child of mine before me, or after me, before receiving his, or her share of my estate in full, *leaving lawful issue,* such issue shall stand in the place of the deceased parent and the share of my estate representing the child who shall have so died *shall belong to and vest in* the issue of such child so dying." The testator then provides in respect to any issue being an infant that such interest shall be held during *minority* and a direction to apply the income to the benefit of such infant, and on reaching majority to pay over the principal of such share, with any accumulation of interest thereon. The petitioner urges that the clause withholding payment to the issue of any deceased child who may be a minor has the effect of postponing the vesting in such issue, and, therefore, creates a suspension for the third life. Where nothing is interposed between a minor and his enjoyment of his estate, except his own minority, the estate is vested, and when the income is given to the minor the gift of immediate income indicates the intention to vest the corpus. *Van Brunt* v. *Van Brunt,* 111 N. Y. 178, 186. The use of these words merely postpones the enjoyment of the fund and in no way suspends the ownership thereof. *Everett* v. *Everett,* 29 N. Y. 39, 75; *Miller* v. *Gilbert,* 144 id. 68; *Fulton Trust Co.* v. *Phillips, supra,* 582; 218 N. Y. 573, 582; *Cammann* v. *Bailey,* 210 id. 19, 30; *Matter of Embree,* 9 App. Div. 602, 604; affd., 154 N. Y. 778. In *Evans* v. *Curtis,* 103 Misc. Rep. 162, relied upon by the petitioner, the attempted gift for unborn issue was contingent upon their survivorship to the period of distribution.

The petitioner further contends that the will again offends in that portion of paragraph 7 which reads as follows: " In the

event of the death of any child of mine before me, or after me, *without leaving lawful issue surviving him,* or her, and before he or she shall be entitled to receive his or her share of my estate in full as hereinbefore provided, *I direct my executors or trustees to add the share representing such child, or of so much thereof as may remain unpaid in equal sums to the shares of my estate representing my other surviving child or children."* By these words upon the death of any first taker the sub-share vests absolutely in the other brother and sisters. *Guernsey* v. *Guernsey,* 36 N. Y. 267. This clause of the will *does not direct* that the sub-share of any cross remainder shall be again submerged in the trust. *Without such express direction,* as was given in the will in the case of *Simpson* v. *Trust Company of America,* 129 App. Div. 200–204 (1908); affd., *sub nom. Simpson* v. *Simpson,* 197 N. Y. 586, and in *Matter of Silsby,* 229 id. 396, 403, the courts have consistently held that either the sub-share vests and will not carry on, or that the ulterior remainder may be cut off. *Everett* v. *Everett, supra; Beatty* v. *Godwin,* 127 App. Div. 98; *Vanderpoel* v. *Loew, supra; Corse* v. *Chapman,* 153 N. Y. 466; *Schey* v. *Schey,* 194 id. 368, 374; *Orr* v. *Orr,* 147 App. Div. 753; affd., 212 N. Y. 615.

The analogy between the case of *Hardenbergh* v. *McCarthy,* 130 App. Div. 538, 541 (1909), and the instant case upon this point is perfect. Justice Scott wrote in *Simpson* v. *Trust Company of America, supra,* and also in *Hardenbergh* v. *McCarthy,* and clearly distinguished the two cases. Justice Scott again wrote in *Chastain* v. *Tilford,* 138 App. Div. 746, 754 (1910); affd., *sub nom. Chastain* v. *Dickenson,* 201 N. Y. 538, on the question of sub-shares in remainder, and found illegal disposition had been made by the will, but disregarded the void part, saying: " The effect of exercising this power [deletion] is not to make a new will for the testator, but to sustain the will in its general scope and purpose, and prevent a complete thwarting of the testator's intention by reason of a minor and unimportant defect."

In *Central Trust Company* v. *Falck,* 177 App. Div. 501 (1917), Justice Scott again wrote upon the subject, on facts being dissimilar to *Simpson* v. *Trust Company of America, supra,* and in part presenting the same question which was involved in *Chastain* v. *Tilford, supra.* He again found the testamentary intent valid.

And in *Wells* v. *Rowland,* 155 App. Div. 354 (1913), strikingly like the *Simpson* v. *Trust Co.* case, the court found no objection to the doctrine laid down in *Vanderpoel* v. *Loew, supra. Graham* v. *Graham,* 49 Misc. Rep. 4; *Matter of Fidelity Trust Co.,* 94 id. 533.

The case of *Orr* v. *Orr, supra,* is quite like the instant case. The court there held that " ' the share, or portion of the one so dying '

means the original share, or portion left by testator to his several children, and that, if any child should, after having taken the share of a deceased brother, himself die, the sub-share would not pass to the trust share of surviving brother and sisters, but would be assets of his father's estate and undisposed of." The court followed *Chastain* v. *Tilford, supra,* and quoted Justice Scott, who said (at p. 762): " So long as the general scheme can be carried out, the fact that it may be found in the end that as to a minor portion of her estate the testatrix has died intestate, does not materially interfere with her general plan." Presiding Justice Ingraham concurred in the affirmance, but on another theory. He said: " I am inclined to think that we are justified in lopping off the last illegal trust, leaving the trust to continue during the life of the widow and the child. * * * This certainly will carry out the main intention of the testator. The continuance of this trust was merely incidental, providing for a contingency that might never happen and was no part of the general scheme of the testator * * *. It was at most a postponement of the date of payment and not a postponement of the vesting of the share * * *. The direction as to the trust share of any child not having reached the prescribed age to be proportionately increased upon the same trusts as above stated can well be eliminated, so that upon the death of anyone of the children during the trust the share held for that child if he or she should leave no issue should be at once divided among his surviving brothers and sisters. It seems to me that this construction of the will will carry out the main intention of the testator, and will be doing no violence to his intentions."

In *Church* v. *Wilson,* 152 App. Div. 844; affd., on opinion below, 209 N. Y. 553, the will *directed* the sub-share to be held for the third life, but the court cut out the void clause in these words: " Hence if the three children of the testator each dies leaving children, there can be no unlawful suspension. The provision for a further life estate causing a further suspension, in case one of the testator's children dies leaving no child, undoubtedly violates the statute against perpetuities, and cannot be sustained, but that is a contingency which may never happen. Should it happen, its effect would be not to destroy the Seventh clause of the will as a whole but only the limitation beyond the second life, as to which no valid remainder having been created by the will, there would be intestacy." *Matter of Colegrove,* 221 N. Y. 455, of similar tenor.

While the will of the testator in some of its portions may be difficult to interpret, the scheme of the will is simple. The provisions for the widow and children are independent and separable (*Kennedy* v. *Hoy,* 105 N. Y. 134; *Van Schuyver* v. *Mulford,* 59 id.

Misc. 22]     Surrogate's Court, Westchester County, December, 1922.

426), and the plan of the will does not fall within the cases cited and relied upon by the petitioner, holding that where trust provisions are not separable, and are so bound up with the testamentary scheme that they cannot be independent the will must be held invalid. *Central Trust Company* v. *Egleston,* 185 N. Y. 23; *Leach* v. *Godwin,* 198 id. 35; *Bailey* v. *Buffalo L., T. & S. D. Co.,* 213 id. 525.

If invalidity has crept into this will as claimed by the petitioner, the valid parts of the will can be separated from those that are invalid and the invalid provisions rejected without defeating the intent of the testator to the extent of the valid parts.    *Kalish* v. *Kalish,* 166 N. Y. 368, 374; *Church* v. *Wilson, supra; Matter of Colegrove,* 221 N. Y. 455, 459;  *Matter of Hitchcock,* 222 id. 57, 73; *Carrier* v. *Carrier,* 226 id. 114; *Matter of Silsby, supra; Matter of Kohler,* 231 N. Y. 353; *Mount* v. *Mount,* 196 App. Div. 508;  affd., 234 N. Y. 568; *Matter of Central Union Trust Co.,* 193 App. Div. 292, 297; *Matter of Abbey,* 181 id. 395; *Matter of Zimmerman,* 104 Misc. Rep. 699, 702; affd., 183 App. Div. 939; *Matter of Allen,* 111 Misc. Rep. 93, 122, 124; affd., 203 App. Div. 860; *Matter of Erickson,* 113 Misc. Rep. 10, 16; *Woolley* v. *Hutchins,* 114 id. 11, 22.

The courts have developed two distinct theories to sustain wills like the one in the instant case.  The process of the rescue of the good part, either by the theory of vesting, or by the lopping off principle, will preserve the primary life estates for the widow and her children, and in case of a child who has already died, for the benefit of children representing such deceased child to whom such interest was to belong and vest in.

The petitioner concedes that the widow's trust for her life is valid.    Thus far all the parties agree.    It, therefore, only remains a debatable question as to where the deletion, if necessary, will begin. The petitioner has commenced to expunge at the end of the first life.  The principle of deletion, or the lopping off, he accepts and gives approval.   The court has, however, extended the lopping off point to the ulterior limitations, if any such exist.   It is plain that the testator did not mean to violate the rule against suspension, because in two places of the will he refers especially to it.   In the 7th paragraph, the one attacked by the petitioner, the testator says: " It being my intention that the absolute ownership of such share of my estate representing any child, or grandchild of mine shall not be suspended, except as hereinbefore specified during the single life of the child whom it represents, and during the minority of any grandchild."   Striking out the reference to the life of the child, and the minority of the grandchild, we have terms of language showing it to be his intention that the absolute ownership shall not be suspended.   The petitioner contends that this clause means

Surrogate's Court, Westchester County, December, 1922.    [Vol. 120

that the estate was, and further must by force of all of the words be suspended for such named period of time. Just what the testator meant, if we use all of his words in reference to suspension of lives this court will not attempt to interpret or define. It is well to observe, however, that if he did mean to violate the rule against perpetuities, the court is not bound to accept such an illegal intention. The testator cannot compel a void suspension. It is of some interest, if not of legal purport, to reiterate that the gift of two-thirds of the residuary estate to the four children of the testator, which includes the petitioner's one-fourth interest therein, is laid out by the same words and by the same provision which carries the gift of the widow's trust to her three children, found in the 7th paragraph. Consequently, if void cross remainders were created as the petitioner claims, in the remainder in the widow's trust, the illegality applies with equal force and effect to his gift, which he has heretofore received in full upon the theory of vested remainder, without question of possible contingencies being raised by him, and with the approval of the Surrogate's Court that such interest did vest in remainder. As the words are the same, so also is the meaning. *Matter of Evans*, 234 N. Y. 42, 46. It would appear that identical words of the will are legal for him; void for his brother and sisters. A simple, devisable and independent testamentary scheme for his benefit; blended, insepa-rable and wholly illegal testamentary plan for the brother and sisters.

The plan and thought of the testator was to secure to the petitioner by his will the amount this son by a former wife would have received had the decedent died intestate. If identical words of the 7th paragraph carry the gift of two-thirds of the residuary estate, and fail to carry the gift of the one-third of the widow's trust beyond the life estate of the widow, as the petitioner con-tends, the petitioner will receive a sum far beyond the division intended and planned by the father. The reason for the unequal gift to the petitioner, the testator's oldest son by a former wife, is stated in the will of the testator in these words: " I make this provision respecting the said one-third of my personal estate to be set apart for the benefit of my wife, and after her death for the children of our marriage in view of the fact that my oldest son, Henry G. Trevor is in possession of a separate estate derived from his mother and maternal grandfather."

The contention of the petitioner that the trusts are so interwoven and blended as to be inseparable; that the testator made a con-tingent and invalid disposition of his property beyond the widow's life, and created gifts for lives not in being at his death the court

cannot agree to for the reasons herein stated. The court sustains the will as against every attack of the petitioner.

A decree may be prepared construing the will in accordance with these views, with costs to the attorneys and allowances to the special guardians that will be provided for in the decree upon notice to attorneys appearing.

Decreed accordingly.